STATE OF CONNECTICUT *v.* GORDON ANDREW BURGE
(12379)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

---

Argued November 7, 1984—decision released February 12, 1985

*Emanuel Margolis,* with whom were *David M. Cohen* and *Tracy Alan Saxe,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this case is the extent to which evidence of mental condition is relevant to criminal intent when the defendant has not raised a defense of insanity. The defendant, Gordon Andrew Burge, was indicted for the murder of James W. Hafner, in violation of General Statutes § 53a-54a (a),[1] and convicted, after a trial by a jury, of

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

the lesser included offense of manslaughter in the second degree, in violation of General Statutes § 53a-56.[2]

From the evidence presented at the trial, the jury might reasonably have found the following facts. The victim, James W. Hafner, was found strangled to death on the morning of October 15, 1980, in a wooded area near a cemetery in Darien. A thirteen year old junior high school student, the victim had last been seen alive on the previous day at a nearby school athletic field where a school soccer game was in progress. When his body was discovered, he was lying face-up, naked above the waist, with his trousers pulled down to expose his buttocks and his pubic hair. His hands were crossed behind his back, and his belt was wrapped around his neck. His blue bicycle was by a fence at the scene of the crime.

Students who had attended the soccer game told the police that the victim had been at the game in the company of someone wearing an "O.D. jacket." The police learned from school personnel that the defendant frequently wore an "O.D. jacket" and had been at the soccer game on October 14, 1980.

Acting on this information, Captain Angelo Toscano, commander of the Darien detective bureau, drove to the defendant's home on October 16, 1980, at 4 p.m., and invited the defendant to come to police headquarters to answer some questions. The defendant complied with this request and went to police headquarters. Although he was not then a suspect or in custody, he was, with his consent, photographed and given standard *Miranda* warnings.[3] The defendant signed a

---

[2] "[General Statutes] Sec. 53a-56. MANSLAUGHTER IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person; or (2) he intentionally causes or aids another person, other than by force, duress or deception, to commit suicide."

[3] See footnote 16, infra.

waiver-of-rights form. The police then questioned the defendant about the crime. Because some of the defendant's answers appeared to be incriminatory, at about 6 p.m. that same afternoon he was taken to the scene of the crime for further interrogation. Upon his return to police headquarters, the defendant agreed to give the police a complete statement about his involvement in the case. At that time the *Miranda* warnings previously given were repeated in part. The defendant signed a confession at about 8:30 p.m. Shortly thereafter he was permitted to see his father, who had come to police headquarters at about 7 p.m.

The defendant is a twenty year old man with limited physical and mental endowments. He has a mental age of 15, and an I.Q. that is on the lower borderline of the normal range. A serious automobile accident in 1976 caused brain damage which exacerbated problems with his speech, his powers of concentration, and his general lethargy. He had, however, received a high school diploma and a driver's license. He greatly admired the police and, before the present incident, entertained unrealistic aspirations to become a policeman.

The defendant did not testify at the trial but offered, through various members of his family, an alibi defense. In addition, a physician testified that, because of the defendant's brain damage, the defendant lacked the strength and the motor coordination required to perform the act of strangulation that led to the victim's death. Finally, the defense stressed that none of the physical evidence recovered by the state police mobile crime unit, evidence consisting of fingerprints, soil samples, human hair, clothing fibers, and fingernail scrapings, was ever linked in any way to the defendant.

The defendant filed timely motions for acquittal, for a new trial, and for dismissal of the charges against him because of the state's alleged failure to disclose

exculpatory material. The trial court denied these motions, and after the defendant was convicted this appeal ensued.

The defendant claims that he is entitled to a new trial because the trial court erred in its evidentiary rulings, in its instructions to the jury, and in its refusal to permit defense counsel to make an opening statement to the jury. The challenged evidentiary rulings concern: the admissibility of the defendant's confession; the impeachment of a defense witness on the basis of previously excluded identification evidence; and the exclusion of evidence relating to a third-party suspect. The challenged parts of the jury instructions relate to: the exclusion of evidence of the defendant's mental condition from the jury's deliberations about criminal intent; the exclusion of certain lesser included offenses from the jury's consideration; and the inclusion of a statement attesting to the state's good faith in prosecuting the defendant.

Because we have concluded that the defendant's most persuasive claims of error are those that arise out of the trial court's instructions to the jury, we will address those issues first. We will thereafter consider those of the remaining claims of error that relate to questions that are likely to arise again upon a new trial.

I

In his claims of error that relate to the trial court's instructions to the jury, the defendant first challenges the trial court's instruction prohibiting the jury from considering the defendant's mental condition in reaching a decision on criminal intent. Although the trial court permitted the jury to take the defendant's mental capacity into account in deciding whether his confession was voluntary, the court expressly ruled out any other role for the evidence that had been presented with regard to his mental state. The court told the jury: "You

may not consider his mental condition, that is any mental disease or defect, brain damage or retardation he may have in determining whether he had the mental state required for the offense charged or any lesser included offense. In other words, you may not ascribe some lesser degree of criminal responsibility to Andrew Burge because of his mental condition if you should find proven beyond a reasonable doubt that he in fact, killed James Hafner." The defendant had requested a charge on mental capacity, and duly excepted to the charge as given. The impropriety of the charge was again called to the trial court's attention as one ground in the defendant's postjudgment motion for a new trial.

The crime with which the defendant was charged by indictment was the crime of murder, a crime which requires the state to prove the defendant's specific intent to commit the acts alleged. This is not, however, the crime of which the defendant was convicted. The jury found him guilty of the lesser included offense of manslaughter in the second degree, which required the state to prove that the defendant recklessly caused the death of another person. General Statutes § 53a-56 (a) (1).[4] The term "recklessly" is statutorily defined to cover conduct by a person "when he is aware of and consciously disregards a substantial and unjustifiable risk." General Statutes § 53a-3 (13).[5]

---

[4] The text of General Statutes § 53a-56 is set out at footnote 2, supra.

[5] General Statutes § 53a-3 (13) provides:

"Sec. 53a-3. DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . (13) A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

The court recognized that the defendant had introduced evidence of his mental condition through both lay and expert witnesses. That evidence was admitted at trial without objection or limitation. The court acknowledged that the jury was required to determine the defendant's capacity to form an intent or his ability to recognize a risk. The court decided nonetheless to exclude evidence of his mental condition from the deliberations of the jury with respect to his criminal intent for two reasons: (1) the defendant had failed to provide notice of his intention to raise his mental condition as a defense in the manner required by Practice Book § 759, and therefore could not rely on expert testimony; and (2) the defendant had provided insufficient nonexpert evidence of his mental condition to avoid speculation or guesswork by the jury. We disagree with this reasoning and thus find reversible error in the trial court's charge.[6]

Practice Book § 759 requires,[7] as the trial court noted, that a defendant who "intends to introduce

---

[6] There is no suggestion that the trial court in other portions of its instructions to the jury corrected its failure to give proper guidance on the relevance of the evidence of mental condition to the jury's deliberations on criminal intent.

[7] "[Practice Book] Sec. 759. —— ——MENTAL DISEASE OR DEFECT INCONSISTENT WITH THE MENTAL ELEMENT REQUIRED FOR THE OFFENSE CHARGED. If a defendant intends to introduce expert testimony relating to a mental disease or defect, or another condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. He shall also furnish the prosecuting authority with copies of reports of physical or mental examinations of the defendant made in connection with the offense charged, within five days after receipt thereof. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

One consequence of the giving of the § 759 notice may be a request by the prosecuting authority for a judicial order requiring the defendant to

expert testimony relating to a mental disease or defect, or another condition bearing upon the issue of whether he had the mental state required for the offense charged" should, in a timely fashion, "notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk." It is conceded that the defendant in this case completely failed to give the requisite notification. Noncompliance with the requirements of § 759 does not, however, make all evidence of mental condition inadmissible. Only if the state objects during the trial when the defendant offers to introduce evidence concerning his mental condition does Practice Book § 761 authorize the court to "exclude the testimony of any expert witness offered by the defendant on the issue of his mental state."[8] Had the state made a timely objection, it might, therefore, have sought to exclude the defendant's expert testimony about his mental condition, although the defendant's lay testimony would still have been admissible. In the absence of a timely objection by the state, it cannot rely on the Practice Book rules. As we held in *State* v. *Hines,* 187 Conn. 199, 205, 445 A.2d 314 (1982), Practice Book § 761 provides the only sanction for noncompliance with § 759. Failure to comply with the notice requirement does not per se justify a refusal to give an instruction on mental condition.

Even if the trial court's instruction in this case was inconsistent with the reasoning of *State* v. *Hines,* the

submit to a psychiatric examination by a psychiatrist designated for this purpose by the order of the court. Practice Book § 760. In this case, the state moved, in advance of the trial, for such a psychiatric examination. The defendant objected thereto, and the motion was denied. The state did not renew its request when the defendant offered expert and lay testimony about his mental condition during the trial.

  [8] "[Practice Book] Sec. 761. —— ——FAILURE TO COMPLY. If there is a failure to give notice or to furnish reports when required by Sec. 759 or to submit to an examination when ordered under Sec. 760, the judicial authority may exclude the testimony of any expert witness offered by the defendant on the issue of his mental state."

state argues that it justifiably assumed that because the defendant in pretrial proceedings relied upon evidence of his limited mental capacity to challenge the voluntariness of his confession, the defendant at the trial was introducing such evidence for the same limited purpose. The state's mistaken assumption, even if the state was genuinely surprised by the direction of the defendant's evidentiary thrust, might have justified a request during the trial for a continuance to enable the state to offer countervailing evidence.[9] The assumption cannot, however, justify the trial court's instruction to the jury not to consider relevant evidence actually admitted without limitation and without objection.

We held, in *State* v. *Hines,* that evidence with regard to mental capacity is relevant in any case where a specific intent is an essential element of the crime charged. "Such evidence is admitted not for the purpose of exempting a defendant from criminal responsibility, but as bearing upon the question of whether he possessed, at the time he committed the act, the necessary specific intent, the proof of which was required to obtain a conviction." Id., 204; see General Statutes § 53a-54a (b).[10] We hold today that such evidence is equally admissible when the defendant is charged

---

[9] We need not decide today whether the state might have been entitled, in light of the defendant's evidentiary posture, to renew during the trial its pretrial request to have the defendant examined by a psychiatrist designated by the court. Only the admissibility of the defendant's confession was at issue when the state's motion for such an examination was rejected. In ruling on the pretrial motion to suppress, the trial court had no reason to anticipate evidentiary offers at the trial concerning the effect of the defendant's mental condition on his criminal intent.

[10] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. . . . (b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person."

with the commission of a crime such as manslaughter in the second degree under which the state must prove that the defendant acted recklessly, i.e., with awareness and conscious disregard of a substantial and unjustifiable risk. See *Hendershott* v. *People,* 653 P.2d 385, 393–94 (Colo. 1982), cert. denied, 459 U.S. 1225, 103 S. Ct. 1232, 75 L. Ed. 2d 466 (1983); *Robinson* v. *Commonwealth,* 569 S.W.2d 183, 185 (Ky. App. 1978); Model Penal Code § 4.02 (1) (Tent. Draft No. 4, 1955); but see *United States* v. *Busic,* 592 F.2d 13, 20–22 (2d Cir. 1978).

In support of its argument that the jury was properly instructed not to consider evidence of the defendant's mental state, the state relies on *State* v. *Bitting,* 162 Conn. 1, 7, 291 A.2d 240 (1971), where we held that evidence of self-induced intoxication, while relevant to negate specific intent, is irrelevant to negate general intent. That argument is not persuasive because evidence of self-induced intoxication is statutorily inadmissible in the case of a crime involving recklessness. General Statutes § 53a-7; *State* v. *Shine,* 193 Conn. 632, 638–42, 479 A.2d 218 (1984); *State* v. *Smith,* 185 Conn. 63, 74, 441 A.2d 84 (1981). We explained the policy behind not admitting evidence of self-induced intoxication to negate recklessness in *State* v. *Shine,* supra, 641, where we quoted *Hendershott* v. *People,* supra, 396, that " '[s]elf-induced intoxication . . . by its very nature involves a degree of moral culpability. The moral blameworthiness lies in the voluntary impairment of one's mental faculties with knowledge that the resulting condition is a source of potential danger to others.' " Mental disease or defect, on the other hand, involves no culpability on the defendant's part, but is caused by processes outside his control. Like involuntary intoxication, evidence of which can be introduced to negate recklessness; *State* v. *Shine,* supra, 642 n.10; *State* v. *Smith,* supra; mental disease or defect is relevant to demonstrate an absence of general intent.

The state's final argument is that the trial court's failure to charge on mental condition with regard to reckless behavior was correct because none of the defendant's witnesses specifically testified about the defendant's capacity to commit a reckless act. The defendant's evidence, according to the state, put into issue the voluntariness of his confession, his understanding of *Miranda* rules and his ability intelligently to waive rights to remain silent and to counsel, but failed in any fashion to address recklessness. We disagree. Evidence of his borderline intelligence and of his retarded capacity for logical thinking, and hence his limited mental capacity, was contained in exhibits describing the defendant's school and clinic records and test scores on differential aptitude tests. The defendant was not obligated to indicate the precise purpose for which testimony on his mental acuity was being offered. See *State* v. *Banks,* 194 Conn. 617, 620, 484 A.2d 444 (1984); *State* v. *Cuvelier,* 175 Conn. 100, 108, 394 A.2d 185 (1978); *Sears* v. *Curtis,* 147 Conn. 311, 316–17, 160 A.2d 742 (1960); *State* v. *Segar,* 96 Conn. 428, 437, 114 A. 389 (1921).

The court's error with regard to the instruction on mental intent requires us to order a new trial. Because the instruction is challenged by the defendant on other issues which may arise again on retrial, we will address those questions next.

The trial court instructed the jury that it might find the defendant guilty of the crime of intentional murder or of a number of lesser included offenses, including manslaughter in the second degree. The defendant had requested the court to charge, in addition, that the jury consider the lesser included offenses of criminally negligent homicide; General Statutes § 53a-58;[11] assault

[11] "[General Statutes] Sec. 53a-58. CRIMINALLY NEGLIGENT HOMICIDE: CLASS A MISDEMEANOR. (a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

in the second degree; General Statutes § 53a-60;[12] and assault in the third degree; General Statutes § 53a-61(a).[13] The defendant urges that the trial court erred in denying these requests to charge additional lesser included crimes. We agree with the defendant in part.

We agree that the court erred in refusing the defendant's request for a jury instruction on criminally negligent homicide. General Statutes § 53a-45 (c) provides that the jury trying a person for murder "may find him guilty of homicide in a lesser degree than that charged." Whether the defendant was entitled to a jury instruction on a lesser degree of homicide pursuant to this statute depends on whether the third and fourth requirements set out in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), were met. "[T]he evidence . . . [must] support a conviction of the lesser included offense and . . . the elements differentiat-

---

[12] "[General Statutes] Sec. 53a-60. ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is committed to the commissioner of correction, or is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member."

[13] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."

ing the lesser offense . . . [must be] sufficiently in dispute to justify finding the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Maselli,* 182 Conn. 66, 72, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); see *State* v. *Falby,* 187 Conn. 6, 28–29, 444 A.2d 213 (1982); *State* v. *Rodriguez,* 180 Conn. 382, 407–408, 429 A.2d 919 (1980).

The critical distinction between murder and criminally negligent homicide is intent. Thus, the issue here is whether "based on the admissible evidence presented at trial, the jury could reasonably have found that the defendant acted . . . with criminal negligence in causing the victim's death"; *State* v. *Falby,* supra, 29; in that he failed to perceive "a substantial and unjustifiable risk" that death would result from his actions. General Statutes § 53a-3 (14).[14] At trial there was evidence that the defendant believed the victim was alive following the attack. The defendant told the police that after the attack he spoke to the victim and observed the victim move his left hand. He further stated that when he left the scene he did not know if the victim was alive or dead. Taking account of this evidence, as well as that relating to the defendant's mental state, the jury could have concluded that the defendant did not understand that the victim could not and did not survive the attack. In these circumstances the state's effort to distinguish *State* v. *Falby,* supra, is unpersuasive. Considered in a light most favorable to the

[14] General Statutes § 53a-3 (14) provides:

"Sec. 53a-3. DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title: . . . (14) A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

accused; *State* v. *Smith,* supra, 77; *State* v. *Morin,* 180 Conn. 599, 609, 430 A.2d 1297 (1980); the evidence presented at trial could have allowed the jury to find that the defendant acted with criminal negligence, as opposed to recklessness or intent to kill, in causing the victim's death.

We do not, however, agree that the trial court erred in refusing to charge on assault in the second degree. This court has never held assault to be a lesser included offense of intentional murder. In the present case, the evidence did not meet the requirements of the third and fourth prongs of the *Whistnant* test. *State* v. *Whistnant,* supra, 588; *State* v. *Smith,* supra, 77–79. The cause of death was not sufficiently in dispute to allow the jury to find that the defendant did not cause the victim's death but did cause him serious physical injury. *State* v. *Jacobs,* 194 Conn. 119, 128, 479 A.2d 226 (1984); see *State* v. *Morin,* supra, 609.

The defendant's final challenge to the trial court's charge questions the propriety of the trial court's instructions that the state had prosecuted the defendant in good faith. Because this issue was not properly raised in the trial court, we decline to review it. For the same reason we also decline to review the defendant's. argument that the trial court erred in charging the jury that "the law is made to protect society and innocent persons and not to protect guilty ones." See Practice Book § 3063.

## II

The defendant's other major claim on appeal is that the trial court erred in refusing to suppress his oral and his written inculpatory statements. This argument has three prongs: (1) improper *Miranda* warnings; (2) no waiver of *Miranda* rights; and (3) overbearing of the defendant's will so that his statements were not volun-

tary. Because the admissibility of the defendant's statements will, in all likelihood, again be an issue upon retrial, some of these arguments must be addressed now.

The defendant's claim that he did not receive the *Miranda* warnings; *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); required by the United States and the Connecticut constitutions[15] depends upon his view of proper timing. The defendant does not deny that he was fully informed of his *Miranda* rights and that he executed a written waiver of those rights between 4:15 and 4:30 p.m. upon his arrival at police headquarters. The state concedes that the defendant was then neither a suspect nor in custody. The defendant's status changed because of statements that he made during the subsequent interrogation and upon his visit with the police to

[15] Although *Miranda* warnings were originally required in state criminal trials by virtue only of the fourteenth amendment to the United States constitution, such warnings now have an independent basis in article first, § 8, of the Connecticut constitution. *State* v. *Ferrell*, 191 Conn. 37, 41, 463 A.2d 573 (1983); *State* v. *Falby*, 187 Conn. 6, 11 and n.1, 444 A.2d 213 (1982).

*Miranda* v. *Arizona* holds that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the scene of the crime. Before 7 p.m., when the defendant returned to police headquarters, the *Miranda* warnings were repeated in part. The defendant then began to give the police a complete written statement, which he completed, read and signed by 8:30 p.m. The defendant argues that the *Miranda* warnings which he received in the late afternoon were inadequate to validate the confessions which he gave in the early evening, although he was throughout those four hours in the presence of the police and subject to their questioning. We disagree.

The purpose of *Miranda* warnings is to assure that a confession is " 'the product of an essentially free and unconstrained choice by its maker.' " *State* v. *Derrico,* 181 Conn. 151, 163, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980), quoting *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). No such choice is "free and unconstrained" unless the accused, before making statements to the police, is aware that he has the constitutional right to remain silent. *State* v. *Ferrell,* 191 Conn. 37, 41, 463 A.2d 573 (1983). Adequate disclosure of the jeopardy in which the accused is being placed is therefore important to alert him to the importance of the constitutional rights which he is being asked to forego. *State* v. *Falby,* 187 Conn. 6, 15, 444 A.2d 213 (1982).

The disclosure that *Miranda* requires must be made no later than the time when an accused is taken into custody. See *Berkemer* v. *McCarty,* 468 U.S. 420, 104 S. Ct. 3138, 3145, 82 L. Ed. 2d 317 (1984); *California* v. *Beheler,* 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (per curiam); *Oregon* v. *Mathiason,* 429 U.S. 492, 494–95, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) (per curiam). When the police are conducting a good faith precustodial investigation at police headquarters, they may have difficulty in

determining the precise moment when questioning turns into custodial interrogation and *Miranda* warnings are required. Cf. *Berkemer* v. *McCarty,* supra, 3151. Although the uncertain line between questioning and custodial interrogation does not excuse late warnings, it does provide a justification for the validity of good faith early warnings which are sufficiently proximate to formal custody to alert the person being questioned to the importance of these constitutional rights.

Early *Miranda* warnings may be constitutionally sufficient if they precede interrogation that directly produces information so immediately incriminating that the defendant's status within a relatively brief period of time becomes that of a suspect in custody. The test is whether the warnings given are, in light of the particular facts and the totality of the circumstances, sufficiently proximate in time and place to custodial status to serve as protection "from the coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation." *Berkemer* v. *McCarty,* supra, 3145; see *Jarrell* v. *Balkcom,* 735 F.2d 1242, 1253–54, reh. denied, 740 F.2d 979 (11th Cir. 1984); *State* v. *Mitchell,* 104 Idaho 493, 496–97, 660 P.2d 1336, cert. denied, 461 U.S. 934, 103 S. Ct. 2101, 77 L. Ed. 2d 308 (1983); *Edwards* v. *State,* 274 Ind. 387, 391, 412 N.E.2d 223 (1980); *People* v. *O'Donnell,* 127 Mich. App. 749, 339 N.W.2d 540 (1983). We recognize that precustodial warnings may fail to provide the necessary protection if the overall situation becomes significantly more coercive as a result of a change to custodial status or if, because of a significant lapse in the process of interrogation, the warnings have become so stale as to dilute their effectiveness. Cf. *United States* v. *Paulton,* 540 F.2d 886, 890–91 (1976); *Grimes* v. *State,* 454 N.E.2d 388 (Ind. 1983); *State* v. *Gilbert,* 98 N.M. 530, 650 P.2d 814 (1982), cert. denied, 465 U.S. 1073,

104 S. Ct. 1429, 79 L. Ed. 2d 753 (1984); *State* v. *McZorn,* 288 N.C. 417, 433–34, 219 S.E.2d 201 (1975), death sentence vacated, 428 U.S. 904, 96 S. Ct. 3210, 49 L. Ed. 2d 1210 (1976); Ringel, Searches, Seizures, Arrests and Confessions (1984) § 26.3 (c).

In this case, the defendant was continuously in the company of the police, was questioned on the same subject by the same officers throughout that time, and confessed within four hours of having been given the warnings. The defendant's mental condition was not shown to have so affected his memory or faculties as to render the earlier warnings ineffective.[16] See *Jarrell* v. *Balkcom,* supra, 1254; *State* v. *McZorn,* supra, 435. In these circumstances, we conclude that the initial warnings performed their constitutionally mandated function even though they were issued prior to the time the defendant was in custody or had become a suspect.

The defendant's other attacks on the admissibility of his statements question whether he knowingly waived his *Miranda* rights and whether his confession was voluntary. Although on the present record it appears that the state introduced sufficient evidence to meet its burden of proof on both of these questions; see *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State* v. *Jones,* 193 Conn. 70, 83–84, 475 A.2d 1087 (1984); *State* v. *Staples,* 175 Conn. 398, 406–407, 399 A.2d 1269 (1978); on remand the defendant should have the opportunity to reargue the extent to which his impaired mental capacity affected the validity of his confession.

---

[16] The warnings given to the defendant immediately prior to his interrogation upon his return from the cemetery were inadequate to provide the protections required by *Miranda.*

## III

The defendant's appeal raises two other evidentiary issues that we should resolve at this time. The trial court imposed limitations on the evidence offered at the trial by one of the victim's fellow students, and excluded all evidence that someone other than the defendant might have committed the crime with which the defendant was charged. We find only the latter of these two rulings to have been erroneous.

The first evidentiary issue arose out of the testimony of Mitchell Kreuch, one of four students who had told the police that they had seen someone, either in the company of the victim, or in the area where he was last seen alive. Although none of the students had been able to identify the defendant at a police reenactment of the crime at the cemetery, some of them subsequently had identified the defendant at a photographic lineup. The trial court had suppressed the latter identifications as unnecessarily suggestive and unreliable.

Kreuch was permitted to testify that the defendant was not the person whom he had seen in the company of the victim. The state prevented defense efforts to have Kreuch testify about the initial inability of the other students to identify the defendant. The trial court ruled that if this testimony were proffered by the defendant, the state would be permitted, in cross-examining Kreuch, to introduce the previously suppressed unreliable identification.

We do not need to decide today whether the reason advanced for the trial court's ruling was valid. There are circumstances in which courts have held that a defendant who testifies in his own behalf may be impeached upon the basis of evidence that the state would have been unable to present in its case in chief. Evidence may be admissible for purposes of impeach-

ment even though it was obtained in violation of the fourth amendment or the requirements of *Miranda*. See *United States* v. *Havens*, 446 U.S. 620, 627–28, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980); *Oregon* v. *Hass*, 420 U.S. 714, 723–24, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975); *Harris* v. *New York*, 401 U.S. 222, 226, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971); but see *New Jersey* v. *Portash*, 440 U.S. 450, 459–60, 99 S. Ct. 1292, 59 L. Ed. 2d 501 (1979) (immunized grand jury testimony inadmissable for impeachment as its use would violate privilege against self-incrimination); *Mincey* v. *Arizona*, 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (any use of involuntary statement is denial of due process); *United States* v. *Brown*, 699 F.2d 585, 590 (1983) (statement taken in violation of sixth amendment inadmissible for impeachment). These cases do not, however, authorize the state, even for impeachment purposes, to rely on evidence which has been adjudged to be not only improperly procured but also unreliable. *Mincey* v. *Arizona*, supra, 398; *Oregon* v. *Hass*, supra, 723; *Harris* v. *New York*, supra, 224. Furthermore, the state concedes that it was not seeking to impeach the credibility of the proffered Kreuch testimony, because all the parties accepted its truthfulness. Because of these caveats, the trial judge's rationale is questionable.

There is, however, as the state urges, an alternate ground for sustaining the ruling of the trial court. The challenged testimony concerning the students' out-of-court attempts to identify the defendant was properly excludable as hearsay. See *State* v. *Randolph*, 190 Conn. 576, 584, 462 A.2d 1011 (1983); *State* v. *Packard*, 184 Conn. 258, 274, 439 A.2d 983 (1981); *State* v. *Barlow*, 177 Conn. 391, 396, 418 A.2d 46 (1979). The evidence was not admissible under the rule of *State* v. *Frost*, 105 Conn. 326, 340–42, 135 A. 446 (1926), because the students were not witnesses at trial available for cross-examination to test the accuracy of their

out-of-court statements; see *State* v. *Packard,* supra, 284–85 *(Bogdanski, J.,* concurring); McCormick, Evidence (2d Ed. 1972) § 251; nor had they made in-court identifications whose reliability the jury could more readily assess if provided with information about their various out-of-court statements. See *State* v. *Watson,* 165 Conn. 577, 590–92, 345 A.2d 532 (1973); *State* v. *Oliver,* 161 Conn. 348, 353 n.1, 288 A.2d 81 (1971); *State* v. *Frost,* supra, 341. The trial court's ruling was therefore not erroneous.

The second evidentiary issue arose out of the defendant's effort to place before the jury evidence that the crime with which he had been charged might have been committed by someone else. The trial court precluded the defendant from offering testimony to show that Craig Davis might have been the culprit, even though Davis had recently lived in the vicinity of the scene of the crime, fit the description of the culprit more closely than did the defendant, had been considered by the police to be a suspect for this crime, and had confessed to the recent commission of a similar assault under similar circumstances at a location near to the place where the victim in this case had been assaulted and killed. This offer of proof meets the standards of admissibility laid down by our cases. See *Siemon* v. *Stoughton,* 184 Conn. 547, 555–56, 440 A.2d 210 (1981); *State* v. *Giguere,* 184 Conn. 400, 405, 439 A.2d 1040 (1981); *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). The trial court was therefore in error in its exclusionary ruling.[17]

---

[17] This case does not require us to determine whether, as the defendant urges, Practice Book § 874 confers upon a trial judge the authority to permit a defendant in a criminal case to make an opening statement to the jury. We reject the proposition that a defendant's constitutional entitlement to make a closing argument to the jury; *Herring* v. *New York,* 422 U.S. 853, 863 n.13, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975); implies a similar right to make an opening argument. None of the cases cited by the defendant requires us to constitutionalize our trial practice to the extent claimed by the defendant.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.