## State of Connecticut *v.* William D. Shine
## (11987)

Speziale, C. J., Peters, Healey, Parskey and Grillo, Js.

Argued April 5—decision released July 10, 1984

*Thomas D. Clifford,* with whom, on the brief, was *David H. Herrmann,* for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

PARSKEY, J. The defendant was convicted by a jury of manslaughter in the first degree and assault in the first degree in violation of General Statutes §§ 53a-55 (a) (3)[1] and 53a-59 (a) (3)[2] respectively and sentenced by the trial court to two concurrent terms of six to twelve years. The principal issue in this appeal is whether General Statutes § 53a-7,[3] which precluded the defendant from introducing evidence of self-induced intoxication to negate the recklessness element of those offenses, deprived him of his constitutional right to a fair trial.

The relevant facts are not in dispute. In the early morning hours of April 3, 1981, the defendant, the decedent, Alan Tierney, and the decedent's sister, Darlene

---

[1] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] "[General Statutes] Sec. 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[3] "[General Statutes] Sec. 53a-7. EFFECT OF INTOXICATION. Intoxication shall not be a defense to criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

Tierney, were all patrons of a bar in Manchester. The bar was sponsoring a "free beer" night where patrons paid a set cover charge and were entitled to consume as much beer as they wished for a two hour period running from 8 p.m. to 10 p.m. Prior to arriving at the bar, the defendant, who had a serious alcohol problem, had been drinking heavily. By 8 p.m., he had consumed ten to twelve bottles of beer as well as several "shots" of hard liquor, and he continued to drink consistently until right before the bar closed at 1 a.m. That the defendant was intoxicated is uncontroverted.

Just prior to the bar's closing the defendant and Alan Tierney engaged in an argument which they resumed outside in the parking lot. The defendant got into his car and Tierney leaned inside the driver's window. When the defendant accelerated, Tierney fell from the car and injured his knee. Darlene Tierney ran to her brother's aid. The defendant drove his car around the parking lot and returned to where Alan and Darlene Tierney were standing. The car struck them both, thereby killing Alan Tierney and injuring Darlene Tierney. The defendant left the scene before the police arrived and did not turn himself in to the police until three days later.

By amended information, the defendant was charged with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and assault in the first degree in violation of General Statutes § 53a-59 (a) (3). The defendant filed a motion in limine seeking to introduce evidence of his voluntary intoxication to dispute that he had acted recklessly. The trial court denied the motion on the ground that the defendant could only introduce such evidence to negate the intent element of a specific intent crime and the crimes that the defendant was charged with violating were general intent crimes.

In its charge to the jury, the trial court cited General Statutes § 53a-7 and instructed the jury that intoxication was not available to the defendant as a "defense"[4] to either charge. The court further charged that the jury could consider the defendant's voluntary intoxication as evidence that the defendant had acted recklessly.[5] The defendant excepted to this portion of the charge.

On appeal the defendant argues that (1) § 53a-7 is unconstitutional; (2) the crimes with which he was charged are specific intent crimes; and (3) because § 53a-7 precludes the defendant from introducing evidence of voluntary intoxication to rebut recklessness but does not preclude the state from introducing that

[4] It is necessary for us to clarify the use of the word "defense." General Statutes § 53a-7 expressly states that intoxication is not a defense to a criminal charge but where it is admissible the defendant may offer evidence of intoxication to negate an element of the crime charged. Under § 53a-7, once the defendant has introduced enough evidence to raise the issue, as part of the state's burden of proving every element of the crime, it is its burden to disprove intoxication. See *State* v. *Turcio,* 178 Conn. 116, 132, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). Although both the trial court and the defendant have inaccurately used the word "defense" to describe the relevance of this evidence, they did not connote a shift in the burden of proof. See General Statutes § 53a-12.

[5] "Thus, the gravamen or the material part of the criminal charge in this case is reckless conduct on the part of the defendant. Section 53a-7 of our Connecticut General Statutes provides that where recklessness is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial.

"I charge you, therefore, in view of the nature of the charges in this case as alleged in the first count, and in the second count of the information, intoxication is not available to the defendant as a defense to such charge. Further, if you find that the imbibing of alcoholic beverage by the defendant contributed to the commission of the crimes with which he stands charged, you may consider such evidence in connection with the claim of the State that the defendant recklessly engaged in conduct under . . . circumstances evincing an extreme indifference to human life."

evidence to prove recklessness, that statute abridges the defendant's right to present a "defense" and relieves the state of its burden of proof in violation of due process of law.

Also in its charge the court instructed the jurors that it was their duty to "draw all reasonable inferences from the conduct of the defendant in light of the surrounding circumstances as to what purpose, intention, or knowledge was in his mind at various times." The defendant claims that this instruction shifted the burden of proof to the defendant and deprived him of a fair trial.

## I

Preliminarily, we will dispose of the defendant's claim that § 53a-7 is unconstitutional because it is a procedural rule that precludes the defendant from introducing relevant evidence to negate an element of the charged offenses. The defendant points us to *Chambers* v. *Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), and *Washington* v. *Texas,* 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967), wherein the United States Supreme Court condemned procedural rules of evidence that effectively prohibited defendants from presenting a viable defense. In his brief the defendant does not elucidate why § 53a-7 is a procedural as opposed to substantive rule, but at oral argument he seemed to argue that because the elements of the criminal offenses are set out in §§ 53a-55 (a) (3) and 53a-59 (a) (3) and the removal of a rebuttal to those elements is set out in § 53a-7, § 53a-7 derogates the substance of the criminal offenses and is therefore procedural. The defendant conceded[6] at oral argument that the legislature could have included the language of § 53a-7 as a proviso or subsection to the criminal

---

[6] This does not mean that the defendant conceded his other constitutional and substantive challenges that we discuss infra.

offenses. We know of no case or principle of law that holds that what the legislature could do in one statute it cannot do in two. The fact that the rule concerning intoxication is embodied in a separate statute does not transform it into a procedural rule. This claim is without merit.[7]

The defendant's next claim does not attack the constitutionality of § 53a-7 but rather urges that the trial court erred in excluding the evidence of voluntary intoxication because crimes with the mental element of recklessness are specific intent offenses and evidence of self-induced intoxication is relevant to negate specific intent. The basis of this argument is that the definition that one acts "recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk";[8] General Statutes § 53a-3 (13); includes cognitive elements akin to specific intent. The short answer to this claim is that under the statute the admissibility of such evidence does not turn on whether the mental state was one of specific intent or of general intent. Hence the statute supersedes the common law, under which evidence of voluntary intoxication was admissible only to negate specific intent. Since, however, our previous cases have not explicitly distinguished the statute from the common law, we believe the defendant's claim merits a fuller explication.

[7] Our analysis above disposes of the defendant's claim that in enacting General Statutes § 53a-7 the legislature unconstitutionally intruded on the judiciary's rule-making power. See *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723 (1974).

[8] The definition of "recklessly" is set out in the definition section of the penal code, General Statutes § 53a-3. Subsection 13 provides:

"A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

In *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971), we defined the difference between general and specific intent as follows: "When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general intent for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent." As we noted in *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963), since 1874 it has been the rule in Connecticut that evidence of voluntary intoxication is relevant to show an absence of specific intent but not of general intent. *State* v. *Carter,* 189 Conn. 611, 624–25, 458 A.2d 369 (1983); *State* v. *Turcio,* 178 Conn. 116, 132, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Reed,* 174 Conn. 287, 295–96, 386 A.2d 243 (1978); *State* v. *Roy,* 173 Conn. 35, 47, 376 A.2d 391 (1977); *State* v. *Crawford,* 172 Conn. 65, 67–68, 372 A.2d 154 (1976); *State* v. *Clemons,* 168 Conn. 395, 406, 363 A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 80 (1975); *State* v. *Bitting,* supra; *State* v. *Davis,* 158 Conn. 341, 352, 260 A.2d 587 (1969); *State* v. *Dennis,* supra; *State* v. *Fiske,* 63 Conn. 388, 391, 28 A. 572 (1893); *State* v. *Johnson,* 41 Conn. 584, 586 (1874); see generally note, 8 A.L.R.3d 1236 § 3 (b).

Although our cases have not expounded on the underlying rationale of this rule, it has been described as an attempt "to arrive at a more humane, yet workable, doctrine" than the nineteenth century refusal to consider the effect of voluntary intoxication at all. *People* v. *Hood,* 1 Cal. 3d 444, 456, 462 P.2d 370, 82 Cal. Rptr. 618 (1969). "The policy of the prevailing law represents

a compromise between the imposition of liability upon [one who commits a homicide while inebriated] in complete disregard of [his] condition, on the alleged ground that it was brought on voluntarily, and the total exculpation required by the defendant's actual state of mind at the time he committed the harm in issue. A balance, in other words, has been compounded from the realization, on the one hand, that the mental state and culpability of a drunken homicide should be distinguished from that of a sober homicide, and from a persistence of the judgment, on the other hand, that a person who voluntarily indulges in alcohol should not escape the consequences." Hall, General Principles of Criminal Law (2d Ed. 1960) p. 537. Thus the theory evolved that, because of the cognitive elements inherent in specific intent crimes, evidence of self-induced intoxication is admissible to negate those elements. See *State* v. *Hines,* 187 Conn. 199, 203, 445 A.2d 314 (1982).

The defendant does not challenge the soundness of this rule but instead attempts to characterize §§ 53a-55 (a) (3) and 53a-59 (a) (3) as specific intent crimes because of the "awareness" and "consciousness" in the definition of "recklessly." He argues that intoxication is relevant and crucial to show that the defendant was not "aware of the risk" and that he did not "consciously" disregard the risk.

The defendant's conduct fits within the definition of general intent. *State* v. *Bitting,* supra; see also *State* v. *Martin,* 189 Conn. 1, 13, 454 A.2d 256 (1983); LaFave & Scott, Criminal Law (2d Ed. 1972) § 28. The state was required to prove that the defendant intended to do the proscribed act, i.e., to engage in conduct that creates a grave risk of death to another person, under circumstances evincing extreme indifference to human life[9] (in this case, driving while intoxicated where peo-

---

[9] The coupling of "extreme indifference to human life" with recklessness is what differentiates manslaughter in the first degree from manslaughter

ple were in his path). A specific intent to injure or to kill is not required.

We do not end our discussion here, however. The defendant's argument exposes once again the fine lines that distinguish the various mental states. See *State v. Giguere,* 184 Conn. 400, 404 n.3, 439 A.2d 1040 (1981). Indeed, he is not alone in his criticism of the specific/general intent distinction that determines the admissibility of the defendant's evidence of self-induced intoxication. See Hall, General Principles of Criminal Law (2d Ed. 1960), p. 556; Note, "Intoxication as a Criminal Defense," 55 Colum. L. Rev. 1210, 1218 (1955); *People* v. *Hood,* supra, 456–57. We do not, however, rely solely on this common law distinction for determining the inadmissibility of the defendant's evidence. Rather, we resort to the plain language of § 53a-7 which does not base the materiality of intoxication on the distinction between specific and general intent but rather expressly prohibits the evidence when the mental state is recklessness or negligence. Cf. *State* v. *Smith,* 185 Conn. 63, 74, 441 A.2d 84 (1981), wherein the defendant was charged with violating the exact statutes as in this case and, with no discussion of specific or general intent, we announced: "Evidence of self-induced intoxication would not have negated recklessness. General Statutes § 53a-7."

It is entirely reasonable for the legislature to make a rule that whatever cognitive elements there are in recklessness, they cannot be negated by evidence of voluntary intoxication. "[T]he majority of cases in America support the creation of a special rule relat-

in the second degree, as proscribed by General Statutes § 53a-56 (a) (1) and manslaughter in the second degree with a motor vehicle while intoxicated, as proscribed by § 53a-56b. See *State* v. *Spates,* 176 Conn. 227, 236, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979). See also Commission Comment, Connecticut General Statutes Annotated, § 53a-55.

ing to intoxication, so that, if the only reason why the defendant does not realize the riskiness of his conduct is that he is too intoxicated to realize it, he is guilty of the recklessness which the crime requires. The Model Penal Code [§ 2.08 (2)] adopts the latter view on the ground 'that awareness of the potential consequences of excessive drinking on the capacity of human beings to gauge the risks incident to their conduct is by now so dispersed in our culture that we believe it fair to postulate a general equivalence between the risks created by the conduct of the drunken actor and the risks created by his conduct in becoming drunk.' " LaFave & Scott, supra, § 45, pp. 346–47.

In *Hendershott* v. *Colorado,* 653 P.2d 385, 396 (Colo. 1982), cert. denied, 459 U.S. 1225, 103 S. Ct. 1232, 75 L. Ed. 2d 466 (1983), the Colorado Supreme Court further explained this rationale. "The concept of self-induced intoxication, by definition, requires that the defendant be aware at the outset that the substance he is about to ingest may affect his mental faculties. It is a matter of common knowledge that the excessive use of liquor or drugs impairs the perceptual, judgmental and volitional faculties of the user. Also, because the intoxication must be 'self-induced,' the defendant necessarily must have had the conscious ability to prevent this temporary incapacity from coming into being at all. Self-induced intoxication, therefore, by its very nature involves a degree of moral culpability. The moral blameworthiness lies in the voluntary impairment of one's mental faculties with knowledge that the resulting condition is a source of potential danger to others. See generally Model Penal Code § 208, Comment 3 (Tent. Draft No. 9, 1959). It is this blameworthiness that serves as the basis for [the] rule of exclusion. Thus, when a defendant chooses to knowingly introduce intoxicants into his body to the point of becoming temporarily impaired in his powers of perception, judgment

and control, the policy enunciated in [a prior case] prohibits him from utilizing his intoxication as a defense to crimes requiring the mens rea of 'knowingly,' 'willfully,' 'recklessly' or 'with criminal negligence.' "

While the defendant cannot introduce evidence of intoxication to dispute recklessness the state can introduce that evidence to prove recklessness. The defendant claims that this rule deprives him of a "defense" because it provides the state with a sword while denying him a shield.

When viewed in the context of the standard that is applied to determine whether conduct is reckless, it is evident that the operation of this rule did not deprive the defendant of the opportunity to contest recklessness. In determining whether the defendant's conduct was reckless, the inquiry is not whether the defendant was too drunk to be aware of the risks but rather whether his conduct while intoxicated "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (13); *State* v. *Maselli,* 182 Conn. 66, 73, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981). Evidence of the defendant's voluntary[10] intoxication is highly relevant as proof of recklessness but is irrelevant to negate recklessness. This rule does not preclude the defendant from introducing other evidence to rebut recklessness. In fact the defendant did introduce evidence that his goal in hurriedly driving away was to escape Alan Tierney, who had reached into his car and was choking him, and that the victims were standing in a heavily travelled part of the parking lot.

---

[10] Evidence of involuntary intoxication, not at issue here, certainly would be admissible to negate recklessness. See *State* v. *Smith,* 185 Conn. 63, 441 A.2d 84 (1981).

Finally, the defendant argues that the effect of this statute is to establish a conclusive presumption which relieves the state of its burden of proof in violation of the precepts of *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), and *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). We need not engage in a lengthy synopsis of these cases. Suffice it to say that they stand for the proposition that the state must prove every element of a criminal offense beyond a reasonable doubt and that conclusive and burden-shifting presumptions which relieve the state of this burden violate due process. See, e.g., *State* v. *Gabriel,* 192 Conn. 405, 413–14, 473 A.2d 300 (1984).

To obtain a conviction under §§ 53a-55 (a) (3) and 53a-59 (a) (3), the state must prove that the defendant (1) engaged in conduct which creates a risk of death, (2) in so doing, he acted recklessly (3) under circumstances evincing an extreme indifference to human life and (4) that his conduct caused the death (manslaughter first degree) or injury (assault first degree) of another person. To prove the second and only disputed element the state introduced evidence that the defendant was very drunk, that he drove at a high speed in an area where a number of people were congregated, and that he drove around the parking lot to the very spot where his adversary was standing. The court charged the jurors that if they found that the defendant's intoxication *"contributed* to the commission of the crimes,"* they could consider that evidence *"in connection* with the claim of the State that the defendant"* acted recklessly. (Emphasis added.) Footnote 4, supra. The defendant's intoxication was not the only evidence of recklessness; see *State* v. *Licari,* 132 Conn. 220, 227, 43 A.2d 450 (1945); and the jury was not instructed that proof of the defendant's intoxication established reck-

lessness. We fail to see how the state was relieved of its burden to prove recklessness beyond a reasonable doubt. See *People* v. *DelGuidice,* 199 Colo. 41, 46, 606 P.2d 840 (1979).

## II

In its charge the court instructed the jury concerning mental state and the drawing of inferences. In particular, the court instructed as follows: "The only way which a jury can determine what a man's purpose, intention, or knowledge was at any given time, aside from a man's own testimony, is by determining what that man's conduct was, and what the circumstances were surrounding that comment, [sic] and from those infer what his purpose, intention, or knowledge was. *To draw such inferences is not only the privilege, but also the duty of a jury,* provided, of course, the inference drawn is a reasonable inference. In this case, therefore, *it will be part of your duty to draw all reasonable inferences from the conduct of the defendant* in light of the surrounding circumstances as to what purpose, intention, or knowledge was in his mind at various times." (Emphasis added.) The defendant claims that the language concerning inferences shifted the burden of proof to the defendant in violation of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).[11]

*Sandstrom* held that a charge to the jury on intent that stated that " '[t]*he law presumes* that a person intends the ordinary consequences of his voluntary acts' " violated the defendant's due process rights

[11] Though the defendant did not except to this charge we have repeatedly held that a claim of error under *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), can be considered under the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). *State* v. *Mason,* 186 Conn. 574, 582, 442 A.2d 1335 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 482–83, 442 A.2d 1320 (1982); *State* v. *Arroyo,* 180 Conn. 171, 173–74, 429 A.2d 457 (1980).

because the jury could have interpreted that instruction as a burden-shifting or conclusive presumption, thereby relieving the state of its burden to prove every element beyond a reasonable doubt. Id., 517–24. It is clear, however, that an instruction on a permissive inference, i.e., one that allows but does not require the jury to infer the mental element from other proof offered by the state, is constitutional. See, e.g., *State* v. *Mason,* 186 Conn. 574, 583, 442 A.2d 1335 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 483, 442 A.2d 1320 (1982); *State* v. *Pina,* 186 Conn. 261, 263, 440 A.2d 967 (1982); *State* v. *Arroyo,* 180 Conn. 171, 175, 429 A.2d 457 (1980), quoting *Ulster County Court* v. *Allen,* 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979).

The court's instruction describes such a permissive inference in that it allowed but did not require the jury to infer the mental element from proof of the defendant's conduct. The jurors were instructed that the inferences they draw must be reasonable. The language that it was their duty to draw such inferences is merely a further explanation of the statement in the charge that proof of the mental element is "necessarily very largely a matter of inference." It did not transform a permissive inference into a conclusion or shift the burden of proof to the defendant.

We have approved this instruction on numerous occasions. For example, in *State* v. *Pina,* supra, 264–65 n.1, *State* v. *Cosgrove,* supra, 483–84, and *State* v. *Mason,* supra, 584 n.6, we held that this exact language cured a variation of the instruction invalidated in *Sandstrom.* In *Crawford* v. *Warden,* 189 Conn. 374, 381–82, 456 A.2d 312 (1983), we examined this instruction and held, "the court's charge with respect to intent made it clear that the jurors were permitted but not required to infer criminal intent from the petitioner's conduct and thus

the instruction did not possess the potential for conclusiveness that was present in *Sandstrom.*"

There is no error.

In this opinion the other judges concurred.