STATE OF CONNECTICUT *v.* CONNIE J. ALSTON
(2812)

DUPONT, C. J., HULL and BORDEN, Js.

Argued October 1—decision released December 10, 1985

*Eugene J. Riccio,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

HULL, J. The defendant was convicted, after a trial to a jury, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] She appeals this conviction claiming that the trial court erred by failing to instruct the jury concerning the general intent required for commission of manslaughter in the first degree. Because we conclude that the court's instructions could not possibly, in the context of the factual issues raised at trial, have misled the jury, we find no error.

The charges arose from a dispute between the defendant and her sister, Pamela Alston, during which the defendant stabbed Pamela fatally. While there was conflicting testimony as to the circumstances surrounding the stabbing, the jury reasonably could have found the following facts. On the date of the incident, the

---

[1] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

defendant was angry with her sister because she believed that Pamela had stolen some money from her. The defendant's brother, James Alston, located Pamela and brought her to the defendant. Prior to confronting Pamela, the defendant picked up a kitchen knife. With the knife in hand, the defendant grabbed Pamela by the collar, and slapped her in the face twice with the flat part of the knife, while demanding that her money be returned. Thereafter, the defendant stabbed her sister.

The defendant's sole claim on appeal is that the trial court failed to charge the jury properly concerning the general intent element of manslaughter under General Statutes § 53a-55 (a) (3). The state, however, argues that this claim of error should not be considered because the defendant neither requested a charge on general intent nor excepted adequately to the charge as given.

"Our general rule is that '[t]he appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered by the party appealing.' Practice Book §§ 854, 3063; see also Practice Book § 3060F (c) (1) and (2)." *State* v. *Fullwood,* 193 Conn. 238, 259, 476 A.2d 550 (1984). Additionally, the exception taken must "state *distinctly* the matter objected to and the ground of the exception." (Emphasis added.) Practice Book § 854. This requirement is imposed so that the trial court will be made aware of claims of error in time to take appropriate remedial steps. *State* v. *Packard,* 184 Conn. 258, 281, 439 A.2d 983 (1981). Accordingly, a trial court's instructions to the jury will not be considered as error on appeal if the exception taken was "insufficient adequately to apprise the court of the deficiency in the charge in a manner which would permit the court to make a correction." *State* v. *Peary,* 176 Conn. 170, 182,

405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979).

Here, counsel for the defendant did not submit a written request to charge on general intent. He did, however, object to the charge the trial court gave.[2] In making his objection, counsel argued that "the definition of the elements 'extreme indifference' and the definition of recklessness itself . . . seem to indicate at least *some type of intent*." (Emphasis added.) Counsel further stated: "I think the definition of those two terms require[s] an intent." Counsel, however, never specified what type of intent should have been charged. Nor did he "state distinctly" how the charge as given was inadequate. Under these circumstances, it cannot

---

[2] The court instructed the jury, in pertinent part, as follows: "That section of the Connecticut General Statutes in so far as is pertinent to this case, reads as follows: 'A person is guilty of manslaughter in the first degree when, under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.'

"So, in order to find the defendant guilty under this statute, you must find that the State has proven beyond a reasonable doubt first that the accused, Connie [Alston's] conduct evinced an extreme indifference to human life; second, that the accused's conduct created a grave risk of death to another person, in this case, Pamela Alston; third, that the accused, Connie [Alston], in fact caused the death of Pamela Alston; and fourth, that the death of Pamela Alston was caused by the reckless conduct of the accused, Connie [Alston].

"There is no element of any specific intent involved in this statute. The gist of the charge is recklessness. It is not necessary for the State, the prosecution, to prove that the accused intended to kill or hurt her sister with a knife. It is not necessary for the State to prove that she intended to stab Pamela at all.

"The actual stabbing could have been inadvertent. It could have been intentional. You were aware there were two versions of this incident: One by the witness in the window which would indicate that the stabbing was deliberate and one told by the defendant and her family that it was inadvertent. The question for you to determine under either version is did the accused, under circumstances evincing an extreme indifference to human life, recklessly engage in conduct which would create a grave risk of death to another person, in this case, Pamela Alston; and did that reckless conduct cause the death of Pamela Alston."

be said that the trial court was adequately "apprise[d] . . . of the deficiency in the charge." Id.

The defendant argues that if the exception was inadequate, her claim still may be reviewed under *State* v. *Evans,* 165 Conn. 61, 65–66, 327 A.2d 576 (1973). The state contends that this case is not one which warrants such review. Under the *Evans* bypass rule "we must first determine whether the charge raises a question of constitutional dimension and, if so, whether the claim has merit. *State* v. *Kurvin,* 186 Conn. 555, 557, 442 A.2d 1327 (1982); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973)." *State* v. *Torrence,* 1 Conn. App. 697, 702, 476 A.2d 598 (1984) *(Torrence I),* aff'd, 196 Conn. 430, 493 A.2d 865 (1985) *(Torrence II).* If these two questions are answered affirmatively, we will then review the charge to see if there was error and if so, whether reversal is warranted. *Torrence I,* supra, 702–705.

"Due process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged; *Patterson* v. *New York,* 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); including intent where intent is one of those elements. *Mullaney* v. *Wilbur,* supra, 702." *State* v. *Kurvin,* supra, 558. The trial court must, therefore, instruct the jury so that it clearly understands every element of the crime charged. Accordingly, the defendant's claim that this was not done in this case raises a question of constitutional dimension. Our Supreme Court has "consistently held that colorable claims that jury instructions violated this aspect of due process are appealable even when not raised below. See, e.g., *State* v. *DeMatteo,* 186 Conn. 696, 705–706, 443 A.2d 915 (1982); *State* v. *Perez,* 181 Conn. 299, 311, 435 A.2d

334 (1980); *State* v. *Arroyo*, 180 Conn. 171, 173–74, 429 A.2d 457 (1980)." *State* v. *Smith*, 194 Conn. 213, 217, 479 A.2d 814 (1984). Because the defendant's claim that intent was not properly charged is colorable, we will consider it under *Evans*.

Appellate review under *Evans* is limited. "Since an *Evans* claim by definition alleges a fundamental constitutional error, only certain rules are called into play and they are applied in the rarified context of such an allegation. There is, however, no separate set of substantive standards that produces lowered scrutiny of unpreserved claims of fundamental constitutional deprivation." *Torrence II,* supra, 435. We examine the defendant's claim with these criteria in mind.

To convict the defendant of manslaughter under General Statutes § 53a-55 (a) (3), the state was required to "prove that the defendant (1) engaged in conduct which creates a risk of death, (2) in so doing, [s]he acted recklessly (3) under circumstances evincing an extreme indifference to human life and (4) that [her] conduct caused the death . . . ." *State* v. *Shine*, 193 Conn. 632, 643, 479 A.2d 218 (1984). Additionally, the state had to prove that "the defendant intended to do the proscribed act, i.e., to engage in conduct that creates a grave risk of death to another person, under circumstances evincing extreme indifference to human life . . . ." (Footnote omitted.) Id., 639. Although the court instructed the jury extensively and properly concerning the first four elements of the crime and three times read the statutory definition of recklessly,[3] it did

---

[3] Recklessly is defined in General Statutes § 53a-3 (13) as follows: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

not explain to the jury that the defendant must have intended to do the proscribed act.[4] The failure so to charge was error.

The court's failure to instruct on an essential element of the crime charged, while error, does not automatically require reversal of a subsequent conviction. *State* v. *Kurvin,* supra. Rather, "[a]n alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. *State* v. *Ruiz,* 171 Conn. 264, 273–74, 368 A.2d 222 (1976); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975)." *State* v. *Smith,* supra, 219. "When, as here, a jury instruction is challenged as not merely erroneous but as constitutionally deficient in a fundamental respect, the challenge can succeed only if it is reasonably possible that the jury was misled by the instruction into misunderstanding an issue that has fundamental constitutional significance. See *State* v. *Smith,* 194 Conn. 213, 219–20, 479 A.2d 814 (1984); *State* v. *Kurvin,* supra, 558, 565, 569." *Torrence II,* supra, 435–36. When making this determination, it must be remembered that "[a] court's charge is not to be examined in a vacuum. Rather, it is to be viewed in the context of the factual issues raised at the trial." *State* v. *Kurvin,* supra, 558.

At trial, the defendant presented only one factual issue relevant to this analysis. She claimed that she did not intend to make the physical movement which resulted in her sister's death. In support of this version of the stabbing, the defendant testified that her brother James grabbed her arm and tried to prevent her from touching Pamela. The defendant further tes-

---

[4] The court's instruction in this case preceded the Supreme Court's decision in *State* v. *Shine,* 193 Conn. 632, 479 A.2d 218 (1984). It is *Shine* which established that to be guilty of violating General Statutes § 53a-55 (a) (3), a person must have the general intent to engage in the proscribed conduct.

tified that she struggled to loosen her brother's grip and, as she pulled free, the knife "jumped," causing the fatal wound.

Under General Statutes § 53a-55 (a) (3), a person is guilty of manslaughter if she "recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." Given the defendant's claim of accident, the court's failure to charge the jury on general intent could possibly have misled the jury only if we view the conduct which created the grave risk of death as limited to the act of stabbing. This is not the case. All of the defendant's actions—picking up the knife, grabbing Pamela and slapping her with the knife—created such a risk. It is this whole course of conduct and not only the stabbing that created the risk which caused the death. The defendant never presented any testimony to support a claim that she did not intend to engage in this course of conduct. In fact, the defendant testified that she picked up the kitchen knife and approached her sister intending to use the knife to scare her. She also testified that she grabbed Pamela while holding the knife and slapped her twice in the face with the flat part of the knife.

In reviewing a claim of error in a jury charge "[w]e must examine the issue or issues before the jury, including what was undisputed, and examine the charge 'in view of the factual posture of the case.' " *Torrence I,* supra, 705, quoting *State* v. *Kurvin,* supra, 569. Since the intentional nature of the course of conduct which culminated in the death of Pamela Alston was never contested, it is not reasonably possible that the jury was misled by the court's failure to charge that the defendant must have intended to do the proscribed act.

There is no error.

In this opinion the other judges concurred.