******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* ANTHONY V.[*]
## (SC 21050)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The state appealed to this court, on the granting of certification, from the judgment of the Appellate Court, which had reversed the defendant's conviction of manslaughter in the first degree with a firearm. The defendant's conviction stemmed from an incident in which he shot the victim in the head with a revolver while she was sitting in a small bathroom in their residence. At trial, there was a factual dispute concerning the defendant's conduct leading up to the shooting. The prosecutor, relying on forensic evidence, argued that, while the victim was sitting in the bathroom, the defendant had forcefully pressed the muzzle of the fully-cocked, loaded revolver against her head before it discharged. In contrast, the defense advanced the theory that the revolver, which had a trigger that did not require much force to fire, had accidentally discharged when the defendant tripped on the doorframe of the bathroom. The trial court charged the jury on reckless manslaughter in the first degree with a firearm, along with lesser included offenses, but did not include any express reference to general intent in its charge. On appeal, the state claimed that the Appellate Court had incorrectly concluded that the trial court's failure to instruct the jury specifically on general intent constituted plain error requiring reversal of the defendant's conviction. *Held*:

The Appellate Court incorrectly concluded that the trial court's omission of a specific general intent instruction in its jury charge was plain error, and, accordingly, this court reversed the Appellate Court's judgment and directed that court to affirm the defendant's conviction.

The trial court's omission of a general intent instruction was not an error so obvious and indisputable as to warrant reversal, as the court's charge, when read as a whole, apprised the jury of the requisite element of general intent.

Specifically, the trial court, in charging the jury on reckless manslaughter in the first degree, instructed it on the element of recklessness, the terms of which incorporated the concept of general intent to engage in volitional conduct.

Moreover, the trial court's omission of a general intent instruction did not result in a manifest injustice because the defendant's course of conduct leading up to the shooting involved many volitional acts that culminated in the creation of a grave risk of death under circumstances evincing an extreme indifference to human life, and the state carried its burden of proving that

---

[*]In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

the defendant had the requisite general intent necessary for a conviction of reckless manslaughter in the first degree with a firearm.

There was no merit to the defendant's contention that this court's rejection of the defendant's plain error claim violated the theory of the case doctrine insofar as the manslaughter charge was based on the prosecutor's allegation that the defendant had placed the revolver against the victim's head.

The prosecutor not only relied on evidence establishing that the defendant had pressed the revolver against the victim's head prior to its discharge, but also focused on the dangerous nature of the revolver and a trigger that did not require much force to fire a bullet, the defendant's awareness of the safety deficiencies of this particular revolver, and the cramped nature of the bathroom in which the victim was killed, all of which served to clarify the prosecutor's position that the jury should consider the defendant's entire course of conduct in determining whether he was guilty of reckless manslaughter in the first degree with a firearm.

Argued December 1, 2025—officially released March 3, 2026

*Procedural History*

Substitute information charging the defendant with the crime of manslaughter in the first degree with a firearm, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Alander, J.*; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *Clark*, *Seeley* and *Palmer, Js.*, which reversed the trial court's judgment and remanded the case for a new trial, and the state, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, *Lisa D'Angelo*, deputy chief state's attorney, and *Adrienne Russo*, supervisory assistant state's attorney, for the appellant (state).

*Denis J. O'Malley III*, assistant public defender, with whom was *Kevin S_emataska*, assistant public defender, for the appellee (defendant).

*Opinion*

ALEXANDER, J. A jury found the defendant, Anthony V., guilty of manslaughter in the first degree

with a firearm in violation of General Statutes §§ 53a-55 (a) (3) and 53a-55a (a), in connection with an incident in which he shot the victim, his girlfriend, in the head with a revolver. The sole issue in this certified appeal is whether the Appellate Court correctly concluded that the trial court's failure to instruct the jury on general intent was plain error requiring reversal of the defendant's conviction. Because the principle of general intent was subsumed in the recklessness element of the manslaughter offense under either of the state's two theories of the case at trial, we conclude that the failure to include a stand-alone general intent instruction was not plain error. Accordingly, we reverse the judgment of the Appellate Court.

The jury reasonably could have found the following facts. The defendant and the victim were in an often volatile romantic relationship. They resided together in an apartment in New Haven. On October 17, 2020, shortly before midnight, the defendant called the police and reported that the victim had been shot at their residence. The police found the defendant in a bathroom performing cardiopulmonary resuscitation on the victim, who was unconscious and covered in blood. The police also observed, and later seized, a revolver lying on the bathroom floor. At the time of the victim's death, the defendant was handling the revolver, from which a single bullet was fired that fatally struck the victim in the head while she was sitting in the small bathroom.[1]

The defendant's revolver was later identified as a .44 caliber Pietta replica of a Civil War-era Colt 1851 Navy revolver (revolver). The revolver holds ammunition in a six chamber, rotating cylinder. To discharge a bullet, each chamber must be loaded separately with black powder, a lead ball projectile, and a percussion cap, and the hammer of the revolver must be fully-cocked. Once the trigger is pulled, the hammer drops and strikes the percussion cap, which ignites the powder that will propel the lead ball projectile. The hammer can be set in

---

[1] The bathroom was approximately five feet wide by seven feet long.

three different positions—resting, half-cocked, and fully-cocked. To prevent an unintended discharge, the revolver's hammer is kept in a resting or half-cocked position, which renders the revolver unable to fire. The half-cocked position should also be used when cleaning the revolver because it allows the percussion caps to be removed. For safety reasons, the revolver must be carried with the hammer resting on an empty chamber so that, in case of accidental fire, it will not discharge a bullet.[2] The hammer should be placed in the fully-cocked position only when the user intends to fire it.

The distinguishing feature of the defendant's revolver is its "hair trigger," meaning that the force required to pull the trigger and to discharge a bullet is extremely light. Unlike a standard single action trigger pull, which requires approximately 6 pounds of pressure, the defendant's revolver had a single action trigger pull of, on average, 0.98 pounds. Dennis Lyons, a criminalist with the Rhode Island State Crime Laboratory, testified that this was the lightest trigger pull he had ever encountered. John Cavanna, a sergeant with the Hartford Police Department, testified that the hair trigger may have been the result of a manufacturing defect or postproduction modification.

The defendant, who owned the revolver for many years, was aware of its safety deficiencies. The parties stipulated that, when interviewed by the detectives investigating the incident, the defendant stated: "It's an antique pistol. It's a very complicated thing. It's a revolver so it's not really the safest thing. . . . *That thing should've never been loaded*. The [percussion] caps should've never been on it." (Emphasis added; internal quotation marks omitted.) He also told detectives that he did not allow the victim to handle the revolver because it was unsafe.

---

[2] The owner's manual for the revolver expressly warns: "When the hammer is uncocked, it is resting directly on a percussion cap when fully loaded. A blow to the hammer resulting from a fall/dropping of the gun can cause the gun to discharge. To prevent accidental discharges caused by a blow to the hammer: ALWAYS carry [the revolver] with the hammer down on an empty chamber . . . ."

Following an investigation, the state charged the defendant with reckless manslaughter in the first degree with a firearm, and the case was tried to a jury. At trial, there was a significant factual dispute concerning the defendant's conduct in the moments leading up to the shooting. Relying on forensic evidence, the state argued that, while the victim was sitting in the bathroom, the defendant forcefully pressed the muzzle of the fully-cocked, loaded revolver against her head before it discharged.[3] In contrast, the defendant relied on statements he previously made during police interviews in support of a theory that the revolver had accidentally discharged when he tripped on the doorframe of the bathroom.[4] During those interviews, the defendant stated that, on the night in question, he had decided to clean the revolver, which he kept loaded for self-defense purposes.[5] While holding the revolver and trying to remove a percussion cap, he walked toward the bathroom to retrieve napkins with which to wipe down the gun. When he arrived at the bathroom, the victim was sitting on the toilet with the door open. Then, according to the defendant, he stubbed his toe on the narrow bathroom doorframe, stumbled, and fell forward, causing the revolver to slip from his hands and to discharge a bullet that struck the victim in the head. The defendant relied on Cavanna's testimony that the hair trigger may have been the result of a manufacturing defect or modification in arguing that he had failed to perceive the risks that the revolver posed.

The trial court charged the jury on reckless manslaughter in the first degree with a firearm, along with

---

[3] The state supported this theory with testimony from James Gill, the state's chief medical examiner, that the victim's entrance gunshot wound indicated a "blowback laceration," which typically occurs when a gun is discharged while pressed against the skin. The state also introduced evidence that the defendant's revolver had hair like fibers on its barrel.

[4] In support of the accident theory, the defendant's father testified that the defendant and the victim were in a healthy relationship and "[got] along fine."

[5] The defendant explained that he kept the revolver loaded for self-defense purposes because he lived in a high crime neighborhood. He stated that he had fired the revolver only once in the many years that he owned it and that he routinely wiped it down to prevent the collection of oil and dust.

lesser included offenses. Relevant to this appeal, neither party requested an instruction on general intent, and the court's instructions to the jury did not include any express reference to general intent. The jury found the defendant guilty of reckless manslaughter in the first degree with a firearm. The trial court subsequently sentenced the defendant to a term of twenty-five years of imprisonment, execution suspended after eighteen years, followed by three years of probation.

The defendant appealed from the judgment of conviction to the Appellate Court. See generally *State* v. *Anthony V.*, 227 Conn. App. 281, 321 A.3d 403 (2024). In that appeal, he sought reversal under the plain error doctrine,[6] claiming that the trial court had erred in failing to instruct the jury on general intent for the charged offense. Id., 303. The Appellate Court agreed; id., 303–304; concluding that the element of general intent, namely, whether the defendant acted volitionally by pressing the revolver against the victim's head, was "[t]he critical issue" for the jury to resolve.[7] Id., 311. Without a general intent instruction, the Appellate Court reasoned, "the jury reasonably could not have appreciated the significance of [the defendant's] version of events" and "could have found [him] guilty on the basis of acts or movements . . . that were not volitional or intentional but, rather, accidental or involuntary." Id., 308. This appeal followed.[8]

The state claims that the Appellate Court incorrectly concluded that the omission of an instruction on general

---

[6] The Appellate Court concluded that the defendant's claim of instructional error was implicitly waived under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), and considered his claims under the plain error doctrine. See *State* v. *Anthony V.*, supra, 227 Conn. App. 303 n.13.

[7] The defendant also claimed in the Appellate Court that the evidence was insufficient to support his conviction. *State* v. *Anthony V.*, supra, 227 Conn. App. 283, 285. The Appellate Court disagreed, concluding that "the jury reasonably could have [accepted] . . . the state's theory that the defendant [had] intentionally placed the muzzle of the revolver to the victim's head." Id., 299.

[8] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that it

intent was plain error. The state argues that a separate general intent instruction was not required because the element of recklessness, which the trial court instructed the jury on in detail, necessarily included the concept of general intent. The state further contends that the Appellate Court incorrectly determined that the issue of general intent turned on whether the jury believed that the defendant had pressed the muzzle of the revolver against the victim's head. In the state's view, that particular fact was "legally nonessential" because the defendant's general intent was evidenced by his undisputed course of conduct of how he admittedly handled the revolver on the night of the shooting. The state argues that, even if the jury believed the defendant's version of events, it still would have found him guilty of reckless manslaughter in the first degree with a firearm. We agree with the state.

Our review of the Appellate Court's application of the plain error doctrine is plenary. See, e.g., *State* v. *Blaine*, 334 Conn. 298, 305, 221 A.3d 798 (2019). A well established two-pronged test governs the plain error inquiry. See, e.g., *State* v. *Kyle A.*, 348 Conn. 437, 446, 307 A.3d 249 (2024); see also Practice Book § 60-5. "This [test] requires that we first consider whether the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . Second, we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust." (Citation omitted; internal quotation marks omitted.) *State* v. *Daren Y.*, 350 Conn. 393, 405–406, 324 A.3d 734 (2024).

Turning to the first prong of the plain error test, we conclude that the trial court's omission of a general intent instruction was not an error so obvious and indisputable as to warrant reversal. It is well settled that

was plain error not to instruct on general intent when the state charged the defendant with manslaughter in the first degree with a firearm in violation of . . . §§ 53a-55 (a) (3) and 53a-55a (a), and the defendant's theory of the case was that his conduct was accidental?" *State* v. *Anthony V.*, 350 Conn. 914, 914–15, 324 A.3d 791 (2024).

"a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law." (Internal quotation marks omitted.) *State* v. *Blaine*, supra, 334 Conn. 308. Nevertheless, "[jury] instructions need not be perfect . . . ." (Internal quotation marks omitted.) Id. When reviewing a challenged instruction, "we . . . adhere to the well [established] rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Bruny*, 342 Conn. 169, 202, 269 A.3d 38 (2022).

To secure the defendant's conviction of reckless manslaughter in the first degree with a firearm, the state was required to prove beyond a reasonable doubt that (1) under circumstances evincing an extreme indifference to human life, (2) the defendant recklessly engaged in conduct that created a grave risk of death to the victim, (3) the defendant caused the death of the victim, and (4) in the commission of the offense, he used a firearm. See General Statutes §§ 53a-55 (a) (3) and 53a-55a (a); see also *Leon* v. *Commissioner of Correction*, 189 Conn. App. 512, 539, 208 A.3d 296, cert. denied, 332 Conn. 909, 209 A.3d 1232 (2019). The state also bore the burden of proving beyond a reasonable doubt that "the defendant had the general intent to engage in conduct that created a grave risk of death to another person under circumstances evincing extreme indifference to human life." (Internal quotation marks omitted.) *Leon* v. *Commissioner of Correction*, supra, 539.

The term "general intent" refers to whether a defendant intended to engage in the proscribed conduct deliberately, consciously, or purposefully. See, e.g., *State* v. *Juan J.*, 344 Conn. 1, 21, 276 A.3d 935 (2022). The element requires proof that the defendant acted volitionally "to make the bodily movement [that] constitutes the act [that] the crime requires." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 300 Conn. 490, 502,

15 A.3d 1049 (2011). Because a defendant's intent "to perform the physical acts that constitute the crime . . . in the manner proved by the evidence [is] implicitly a part of the state's burden of proof and, in that sense, an element of the crime," a jury instruction on general intent is required only when that element has been disputed at trial and "there is evidence . . . that suggests that the defendant's conduct was involuntary . . . ." (Internal quotation marks omitted.) Id., 502 n.14.

The jury charge in the present case, when read as a whole, apprised the jury of the requisite element of general intent. The critical issue of intent for the jury was not whether the defendant acted volitionally by placing the revolver against the victim's head. Rather, the issue was whether the defendant acted recklessly by entering the bathroom, in close proximity to the victim, as he attempted to remove a percussion cap from what he knew to be a loaded, hair-trigger, and exceptionally dangerous revolver. Although there was no express reference to general intent in the jury charge, the trial court instructed the jury on the element of recklessness, the terms of which incorporated the concept of general intent to engage in volitional conduct. The trial court instructed the jury in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when, under circumstances evincing an extreme indifference to human life, he *recklessly engages in conduct* [that] creates a grave risk of death to another person . . . .

\* \* \*

"The third essential element [of manslaughter in the first degree with a firearm] is that the defendant engaged . . . in such conduct recklessly. Under our law, a person acts recklessly with respect to a result or to a circumstance . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . . There must be a great or substantial difference between, on the . . . one hand, the defendant's conduct in consciously disregarding a substantial and unjustifiable risk and, on the

other hand, what a reasonable person would have done or not done under the circumstances.

"Here, the risk, which the state must prove beyond a reasonable doubt, that the defendant was aware of but consciously disregarded when he engaged in his challenged conduct is . . . [a] risk that such conduct would cause the death of [the victim], which was not only substantial and unjustifiable, but grave or extremely serious. The state must further establish that disregarding that risk was a gross deviation from the standard of conduct that a reasonable person would have observed in the defendant's situation." **(Emphasis added.)**

A jury "charge . . . is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict . . . ." (Internal quotation marks omitted.) *State* v. *Blaine*, supra, 334 Conn. 308. It is "especially rare for a jury instruction to be so clearly improper that . . . plain error review [is] necessary to correct it." *State* v. *Kyle A.*, supra, 348 Conn. 448. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." (Internal quotation marks omitted.) Id., 451.

In the present case, under the instruction given at trial, the jury could find the defendant guilty of the charged offense only if it concluded that he had engaged in the challenged conduct—walking in close proximity to the victim as he handled a loaded, uniquely hazardous revolver—while aware of, but consciously disregarding, a grave risk of death to the victim. A general intent instruction, if provided, would have directed the jury to find the defendant guilty only if he intended—either deliberately, consciously, or purposefully—to engage in conduct that created a grave risk of death to another person under circumstances evincing extreme indifference to human life. See Connecticut Criminal Jury Instructions 2.3-1, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited February 24,

2026). The omission of that language did not mislead the jury because the very same requirement was incorporated in the instruction describing the mental state that defines recklessness. See, e.g., *State* v. *Salamon*, 287 Conn. 509, 573–74, 949 A.2d 1092 (2008) (concluding that incomplete definition of intent did not mislead jury with respect to crime of unlawful restraint in the first degree because that mental state was accurately defined in connection with act element of restraint). General intent was necessarily implicit in the finding of conscious disregard. See, e.g., *State* v. *Gonzalez*, supra, 300 Conn. 502 n.14. Indeed, the core of recklessness is "a subjective realization of a risk and a conscious decision to ignore that risk . . . ." (Internal quotation marks omitted.) *State* v. *Wade*, 106 Conn. App. 467, 479, 942 A.2d 1985, cert. granted, 287 Conn. 908, 950 A.2d 1286 (2008) (appeal withdrawn June 11, 2008).

In addition to the lack of an obvious error, we cannot conclude that a manifest injustice occurred in this case. In the Appellate Court's view, general intent was the dispositive issue at trial; *State* v. *Anthony V.*, supra, 227 Conn. App. 311; and, in order to secure a conviction, "the state was *required* to prove . . . that the [defendant] acted volitionally to use . . . [the revolver] . . . by intentionally placing it against the victim's head." (Emphasis added; internal quotation marks omitted.) Id., 307. Thus, the Appellate Court reasoned that, without a general intent instruction, "the jury reasonably could not have appreciated the significance of [the defendant's] version of events" and might have relied on an accident to find him guilty. Id., 308. Expanding on this point, the defendant cites this court's decision in *State* v. *Martin*, 189 Conn. 1, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983), in arguing that the jury could not properly consider his claim of accident without a general intent instruction. We disagree.

In *Martin*, the defendant was charged with risk of injury to a child, among other crimes, for pushing a child against a wall. See id., 2, 5–6. At trial, the defendant

argued that his conduct was accidental. Id., **10.** He claimed that someone had grabbed him from behind, he spun around, and his kneecap locked, causing him to inadvertently fall into the child. Id., **11.** The trial court's jury charge did not expressly define the element of general intent. See id., **11–12.** On appeal, this court concluded that "[t]he defense of accident raised by the defendant clearly presented the issue of whether his act . . . was an intended bodily movement . . . . The failure of the [trial] court even to allude to this defense as one which the state had to disprove was a serious deficiency in the charge." Id., **13.** *Martin* is distinguishable from the present case because the defendant was charged with reckless conduct, and his claim of accident here did not address the admittedly nonaccidental conduct that the jury was entitled to find established his criminal liability for reckless manslaughter with a firearm. Instead, the defendant claimed only that *some* of his conduct was nonvolitional, namely, tripping while handling the loaded revolver. We consider this to be a crucial distinction in determining whether the claim of accident placed general intent at issue so as to render the absence of an instruction on the element a manifest injustice. See *State* v. *Alston*, 5 Conn. App. 571, 577–78, 501 A.2d 764 **(1985)** (trial court's failure to instruct jury on general intent did not require reversal of manslaughter conviction when defendant claimed that "she did not intend to make the physical movement" of stabbing because grave risk of death was created by defendant's *entire course of conduct*, including "picking up the knife," grabbing her sister, and "slapping her with the knife"), cert. denied, 198 Conn. 804, 503 A.2d 1186 **(1986).**

In the present case, the defendant's entire course of conduct on the night of the victim's death, nearly all of which was undisputedly intentional, culminated in creating a grave risk of death under circumstances evincing an extreme indifference to human life. The defendant's claim that he tripped while holding the revolver did not negate these undisputed facts establishing general intent—that is, he intentionally picked

up a loaded revolver with a hair trigger and, while trying to remove the percussion caps, carried it toward a small room where the victim was sitting. Thus, the claimed lack of an instruction was not manifestly unjust because the defendant's course of conduct involved many volitional acts, and the state still carried its burden of proving that the defendant had the requisite general intent. See, e.g., *State* v. *Edwards*, 214 Conn. 57, 67–68, 570 A.2d 193 (1990) (evidence was sufficient to sustain reckless manslaughter conviction when defendant, who relied on defense of accident, had possessed loaded revolver and engaged in struggle for weapon resulting in accidental discharge). Given these circumstances, we conclude that it is not reasonably possible that the jury was misled by the trial court's failure to instruct it on general intent. See, e.g., *State* v. *Alston*, supra, 5 Conn. App. 578.

The defendant argues that this conclusion violates the theory of the case doctrine because the state charged the defendant on the basis of the allegation that he placed the revolver against the victim's head, and not as a course of conduct. He points specifically to the following statement by the prosecutor during closing argument: "The state's theory is that the defendant showed an extreme indifference to the life of [the victim] and created a grave risk of her death when he pressed a loaded . . . revolver to the side of her head . . . ." This argument is premised on an incomplete view of the record.

Under the theory of the case doctrine, the state on appeal may not change its factual theory of the case. See, e.g., *State* v. *Alicea*, 339 Conn. 385, 399–400, 260 A.3d 1176 (2021). "[T]hat theory must have been not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense. . . . Accordingly, on appeal, the state may not construe evidence adduced at trial to support an entirely different theory of guilt than the one that the state argued at trial." (Citations omitted; internal quotation marks

omitted.**)** *State* v. *King*, 321 Conn. 135, 149, 136 A.3d 1210 **(**2016**).**

The prosecutor's reliance on evidence establishing that the defendant had pressed the revolver against the victim's head prior to its accidental discharge did not comprise the state's entire theory of the case. Throughout the trial, the prosecution focused on the dangerous nature of the revolver and its hair trigger, the defendant's awareness of these safety deficiencies, and the cramped nature of the bathroom in which the victim was killed.

This evidence supported the prosecutor's response to the defendant's claim that he tripped while handling the loaded revolver. The prosecutor, without objection, argued during rebuttal: "[T]he evidence supports no other verdict than manslaughter in the first degree with a firearm, no other conclusion [than] that [the defendant] was extremely reckless that night. *And that is true, frankly, regardless of which version you believe, whether he pressed the firearm up against her head forcefully or he was handling it and tripped.*"[9] **(**Emphasis added.**)** This statement clarified the state's position that the jury should consider the defendant's entire course of conduct in deciding whether to find him guilty. Therefore, the state's argument on appeal that the defendant could have been convicted under his version of events

[9]The entirety of the relevant portion of the prosecutor's rebuttal closing argument is as follows: "[T]he evidence supports no other verdict than manslaughter in the first degree with a firearm, no other conclusion [than] that [the defendant] was extremely reckless that night. *And that is true, frankly, regardless of which version you believe, whether he pressed the firearm up against her head forcefully or he was handling it and tripped.* He was extremely reckless that night. He was evincing an extreme indifference to her life. He knew handling that gun loaded with firing caps on was very dangerous. He knew if the gun were dropped with those firing caps on, it could discharge. *He knew it was a hair trigger, and, yet, he's still fiddling with the firing caps, not looking where he's going, blind as a bat, as he called himself, in forward motion toward the incredibly small space* where [the victim] was seated when she was killed. And what happened as a result of the confluence of that extreme recklessness was the product of [the] defendant's disregard for [the victim's] life at that moment." **(**Emphasis added.**)**

does not constitute a "trial by ambuscade." (Internal quotation marks omitted.) *State* v. *King,* supra, 321 Conn. 149. Accordingly, we conclude that the Appellate Court incorrectly determined that the trial court's omission of a general intent instruction was plain error.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.