******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* DANIEL BAEZ
## (SC 21003)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of murder in connection with the shooting death of the victim, the defendant appealed to this court. The victim had prearranged to meet with the defendant at a local park. The victim went to the park accompanied by four other individuals. After arriving at the park, the defendant and another individual with the defendant approached the victim and his group. The victim, who was not armed, asked the defendant, "what's up," to which the defendant did not respond. Instead, the defendant pulled out a gun and pointed it at the victim. The victim then told everyone in his group to run and also attempted to flee. As the victim was running away from the defendant, the defendant fired multiple bullets and killed the victim. At trial, defense counsel sought to establish the defendant's claim of self-defense through cross-examination of the state's witnesses, including the individuals in the victim's group. After the trial court instructed the jury on self-defense, the duty to retreat exception to self-defense, and certain lesser included offenses, including reckless indifference manslaughter in the first degree with a firearm and reckless manslaughter in the second degree with a firearm, the jury rejected the defendant's self-defense claim and found him guilty of murder. On appeal, the defendant claimed, inter alia, that the state had failed to satisfy its burden of disproving his claim of self-defense beyond a reasonable doubt. *Held*:

The defendant's claim that the state had failed to meet its burden of disproving his claim of self-defense beyond a reasonable doubt was unavailing.

The evidence provided ample support for the jury to have concluded that the defendant did not reasonably believe that the victim was about to use deadly physical force or to inflict great bodily harm and that he needed to use deadly physical force to defend himself, as eyewitness testimony uniformly established that the victim was not armed and did not attack the defendant, and also established that the victim and the individuals in his group were running away from the defendant when the defendant started shooting.

Moreover, even if the jury did find that the defendant had reasonably believed that the victim and the individuals in his group were about to use deadly physical force or to inflict great bodily harm, it also reasonably could have found that the defendant's use of deadly physical force was nevertheless unjustified because the state carried its burden of proving beyond a reasonable doubt that the defendant could have safely retreated without shooting the victim.

The defendant could not prevail on his unpreserved challenges to the trial court's instructions under the plain error doctrine.

There was no merit to the defendant's claim that the trial court's instruction that the jury had a "duty to draw all reasonable and logical inferences" with

respect to the element of intent diluted the state's burden of proof, as the defendant artificially isolated the challenged language from the remainder of the court's instructions on intent, and the court's instructions on intent, when read as a whole, did not mislead the jury.

Because the defendant was charged with murder, a specific intent crime, the trial court's instruction on proximate cause was improper, but, viewing the court's instructions in their entirely, this court concluded that the trial court had adequately conveyed to the jury that the state was required to prove each element, including the defendant's specific intent, beyond a reasonable doubt, and, therefore, it was not reasonably possible that the challenged instruction misled the jury.

The trial court's failure to instruct the jury specifically concerning general intent did not mislead the jury, as the defendant's intent to fire his gun was not in dispute, and the omission of a stand-alone general intent instruction is not plain error when, as in the present case, the principle of general intent is subsumed in the trial court's instructions on the element of recklessness as those instructions pertained to the lesser included offenses of reckless manslaughter.

Argued February 4—officially released May 5, 2026

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *K. Doyle, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Jesse Giddings*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Daniel Baez, appeals directly to this court from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a. He claims that the judgment of conviction should be reversed because the state failed to meet its burden of disproving beyond

a reasonable doubt that he had acted in self-defense. He further claims that the trial court's jury instructions on intent were confusing and contradictory and, therefore, amounted to plain error.[1] We disagree with these claims and affirm the judgment.

The jury reasonably could have found the following facts. On June 24, 2020, the defendant drove with Sydney Witchard to Windsor Locks, so that Witchard could return an item to a friend. Witchard had come to know the defendant through Facebook and met him in person for the first time two days earlier. The victim, Elijah Ortega, with whom Witchard had been in an on-again, off-again relationship, was at that friend's house when Witchard and the defendant arrived. Witchard got out of the car to return the item while the defendant, who was wearing a face mask due to the COVID-19 pandemic, remained in the car. As Witchard handed the item to the nearest person, the victim began yelling at the defendant, "I know who you are. . . . Take off that mask!" The defendant did not say anything in response, and, after Witchard returned to the car, they drove away. For the next several hours, the victim called and sent text messages to Witchard's cell phone, eventually asking both Witchard and the defendant to meet him in Pesci Park in Windsor Locks. They agreed to meet.

---

[1] The defendant also asks this court to exercise our supervisory authority to adopt a more flexible standard for trial courts instructing a jury on lesser included offenses pursuant to *State* v. *Sawyer*, 227 Conn. 566, 630 A.2d 1064 (1993). The defendant contends that the application of *Sawyer*, which requires a jury first to reach a unanimous verdict on a murder charge before considering any lesser included offenses; see id., 579, 583, 587; resulted in substantial injustice here. "Supervisory authority is an extraordinary remedy that should be used sparingly . . . ." (Internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 498, 102 A.3d 52 (2014). "[W]e are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Jacques*, 353 Conn. 122, 160, 340 A.3d 1073 (2025). Having reviewed the defendant's arguments, we conclude that they do not point to an issue warranting the exercise of our supervisory authority, and we therefore decline the invitation to do so.

Prior to going to the park, the victim went to the home of Joniesha Williams to see his sister, Alajzah Ortega (Alajzah). The victim asked his sister to accompany him to the park so that she could fight Witchard while he fought the defendant. Alajzah agreed and called her cousin, Helena Ward, and her friend, Marissa Lee, asking them to meet her at Williams' house. The group of five then proceeded to the park in two cars. The defendant and Witchard also brought additional people to the park—Marques Bowie and Jerod Frank.

Once they arrived, the defendant and Frank went ahead while Bowie and Witchard stayed behind. Frank and the defendant, who was wearing red shorts, a white tank top, and a black fanny pack, approached the victim and his group, which included Alajzah, Lee, Ward, and Williams. The victim took off his hooded sweatshirt and asked the defendant, "what's up?" The defendant did not respond. The defendant then pulled a gun out of his fanny pack and pointed it at the victim. The victim told everyone to run, and they did. The victim also attempted to flee. The defendant then fired eight shots, hitting the victim twice. The first bullet hit the victim in the back of the left thigh, and the second traveled through his left arm and into his chest, lodging in his heart. The second bullet caused the victim's death.

The state charged the defendant with murder in violation of §53a-54a. At trial, the defendant, who did not testify, sought to establish a claim of self-defense solely through defense counsel's cross-examination of the state's witnesses. Following closing arguments, the trial court charged the jury on, among other things, the justification defense of self-defense and the duty to retreat exception to that justification. It also charged the jury on four lesser included offenses, including both reckless indifference manslaughter in the first degree with a firearm and reckless manslaughter in the second degree with a firearm. At the conclusion of the trial, the jury rejected the defendant's self-defense claim and found him guilty of murder. The trial court sentenced

the defendant to forty-eight years of incarceration. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first consider the defendant's claim that reversal is required because the state failed to meet its burden of disproving beyond a reasonable doubt that he had acted in self-defense. He asserts that his use of deadly physical force was justified because he was confronted by a group of people, including the victim, who had made it clear that he intended to assault the defendant. The state argues in response that the evidence was sufficient for the jury to conclude that the defendant's belief that he needed to use deadly physical force against the victim was not reasonable and that he could have safely retreated without shooting the victim. We agree with the state.

Our standard of review and the applicable principles of law are firmly established. "The standard of review governing a challenge to the sufficiency of the evidence to defeat a claim of self-defense . . . is the same [as the] standard used when examining claims of insufficiency of the evidence." (Internal quotation marks omitted.) *State* v. *Johnson*, 351 Conn. 53, 62–63, 328 A.3d 143 (2025). "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) Id., 63.

"In reviewing the sufficiency of the evidence, [w]e do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Ramsey*,

352 Conn. 210, 232, 336 A.3d 455 (2025). Thus, when a defendant challenges the sufficiency of the evidence to defeat a claim of self-defense, "we construe the evidence and all the reasonable inferences drawn therefrom in the light most favorable to supporting the jury's rejection of the defendant's defense." (Internal quotation marks omitted.) Id.

"In Connecticut, it is well settled that self-defense is a justification for engaging in otherwise criminal conduct." (Internal quotation marks omitted.) *State* v. *Williams*, 352 Conn. 104, 115, 335 A.3d 792 (2025). "We have explained that [j]ustified conduct is subject to neither condemnation nor punishment because it does not, under the circumstances, violate the prohibition of the law, and indeed may be desired and encouraged . . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal." (Internal quotation marks omitted.) Id.

"Pursuant to General Statutes § 53a-19 (a),[2] a person is justified in using deadly physical force[3] to defend himself . . . against an imminent use of physical force by a third person only if the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. Thus, four conditions must exist for an act of violence to be justified on the grounds of self-defense . . . (1) the defendant must actually have believed that the victim was using or was about to use physical force against him . . . (2) a reasonable person, viewing all the circumstances from the defendant's point of view, would have shared that belief, (3) the defendant must actually have believed that the degree of force he used was necessary for defending himself . . . and (4) a reasonable person,

[2] Although § 53a-19 was the subject of amendments in 2022; see Public Acts 2022, No. 22-117, § 9; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] General Statutes § 53a-3 (5) defines "deadly physical force" as "physical force which can be reasonably expected to cause death or serious physical injury . . . ."

viewing all the circumstances from the defendant's point of view, also would have shared that belief." **(**Internal quotation marks omitted; footnotes added.**)** *State* v. *Johnson*, supra, 351 Conn. 60–61.

Section 53a-19 also sets out exceptions to the self-defense justification, which include, as relevant to this case, a duty to retreat. Under §53a-19 (b), "a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating . . . ." "The underlying policy of the duty to retreat is that the protection of human life has a higher place in the scheme of social values than the value that inheres in standing up to an aggression." *State* v. *Anderson*, 227 Conn. 518, 530, 631 A.2d 1149 (1993).

The state bears the burden of disproving the defendant's justification defense of self-defense. See, e.*g.*, *State* v. *Johnson*, supra, 351 Conn. 62. "To sustain its burden, the state must disprove beyond a reasonable doubt any of the components of [the defense] or establish beyond a reasonable doubt that any of the statutory exceptions . . . applied." (Internal quotation marks omitted.) Id. "In assessing the sufficiency of the evidence, we must focus on the theory of self-defense . . . that was presented at trial." Id.

We begin our analysis by construing the record in the light most favorable to sustaining the verdict. Among other evidence, the jury had before it the testimony of Alajzah, Lee, Ward, and Williams, each of whom was present during the altercation between the defendant and the victim. These eyewitnesses uniformly testified that the victim did not throw any punches. The four eyewitnesses further testified that the defendant pulled out a gun without any significant exchange of words with the victim. Alajzah and Lee also testified that the victim was unarmed. Additionally, Daniel Bontempo, a detective with the Windsor Locks Police Department, testified that none of the eyewitnesses that he interviewed stated that the victim was carrying a weapon.

Three of the eyewitnesses testified that the victim attempted to run away from the defendant upon seeing the gun. This testimony is consistent with the autopsy report and the testimony of the medical examiner, which show that one of the bullets hit the victim in the back of his left thigh.

At trial, the prosecutor also introduced into evidence a video taken by Lee with her cell phone on the night of the incident. Although the video does not provide a clear view of the altercation, it does provide audio demonstrating the passage of a few seconds between the screams—presumably when the defendant pointed the gun at the victim—and when the defendant fired the gun.

The second step of our analysis requires us to determine whether "the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Johnson*, supra, 351 Conn. 63. If the jury credited the testimony of the eyewitnesses, it could have inferred that, because there was no indication that the victim was armed, and he did not attempt to punch the defendant first, any belief that the defendant had that physical force was imminent and that deadly force was necessary to defend himself was unreasonable. It also could have concluded that a reasonable person in the same situation would not have shared the defendant's alleged belief.

The jury could have drawn the same inferences if it credited the testimony that the victim and the rest of his group were running away when the defendant started shooting. The medical examiner's autopsy report, showing the injury to the back of the victim's left thigh, further supports the inferences that the defendant shot the gun while the victim was running away and that the defendant, therefore, was not in any immediate danger when he shot the victim. Moreover, when considering Lee's cell phone video, the jury reasonably could have concluded that, if the defendant had been in life-threatening danger, he would not have paused between pointing the

gun at the victim and firing it, as doing so would have given the victim or a member of his group a chance to harm the defendant.

Even if the jury did find that the defendant reasonably believed that the victim and his group were about to use deadly physical force or to inflict great bodily harm; see General Statutes § 53a-19 (a); it reasonably could have determined that the defendant's use of deadly physical force was nevertheless unjustified because the state carried its burden of proving beyond a reasonable doubt that the defendant could have retreated. See General Statutes § 53a-19 (b) (1). As discussed, when construed in the light most favorable to sustaining the verdict, the record shows that the victim and the members of his group were running away from the defendant before he fired the gun. The jury reasonably could have inferred that the defendant would have had an opportunity to safely retreat because the people running away, including the victim, posed no threat to him. Additionally, the jury reasonably could have concluded that, although there may have been five people on the victim's side of the encounter and two people on the defendant's side, the victim's group and the defendant's group were, indeed, on sides; in other words, the defendant was not surrounded. Thus, it was reasonable for the jury to conclude that a pathway for retreat was available to the defendant.

In its totality, the evidence provides ample support for the jury to have concluded that the defendant did not reasonably believe that the victim was about to use deadly physical force or to inflict great bodily harm against him and that he needed to use deadly physical force against the victim to defend himself. Alternatively, the evidence provides enough support for the jury to have concluded that the defendant could have retreated in complete safety without shooting the victim. We therefore conclude that there was sufficient evidence to support the jury's rejection of the defendant's self-defense claim on the ground that the state had disproven that claim beyond a reasonable doubt.

## II

We next address the defendant's challenges to the trial court's jury instructions on intent.[4] The defendant acknowledges that this claim was not preserved but asserts that the judgment of conviction should be reversed under the doctrine of plain error. A plain error inquiry is governed by a well established two-pronged test. See, e.g., *State* v. *Anthony V.*, 354 Conn. 255, 261, 350 A.3d 1128 (2026); see also Practice Book § 60-5. First, we "consider whether the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Internal quotation marks omitted.) *State* v. *Daren Y.*, 350 Conn. 393, 405–406, 324 A.3d 734 (2024). "Second, we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust." (Internal quotation marks omitted.) Id., 406.

"It is well settled that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. . . . Nevertheless, [jury] instructions need not be perfect . . . . When reviewing a challenged instruction, we . . . adhere to the well [established] rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . .

---

[4] The trial court provided the jury with the following instruction: "In essence, you are to consider all the evidence presented by the state and the defense in your determination of whether the state has established the requisite intent beyond a reasonable doubt. In this case, therefore, it will be part of your duty to draw all reasonable and logical inferences from the conduct that you may think the defendant engaged in, in light of the surrounding circumstances, and from this determine whether the state has proven the element of intent beyond a reasonable doubt.

"This inference is not a necessary one. That is, you are not required to infer intent from the defendant's conduct, but it is an inference that you may draw if you find it is reasonable, logical and in accordance with the instructions on circumstantial evidence. I again remind you that the burden of proving intent beyond a reasonable doubt is on the state."

we will not view the instructions as improper." (Citations omitted; internal quotation marks omitted.) *State* v. *Anthony V.*, supra, 354 Conn. 261–62. "It is well established that a defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled." (Internal quotation marks omitted.) *State* v. *Jones*, 320 Conn. 22, 52, 128 A.3d 431 (2015).

The defendant first contends that the trial court's instruction to the jury that it had a "duty to draw all reasonable and logical inferences" was confusing and incorrect. He argues that the absence of an instruction on a corresponding duty to draw all reasonable and logical inferences concerning the lack of intent diluted the state's burden. In response, the state asserts that the trial court's intent instructions, read as a whole, did not mislead the jury, and, therefore, any claim of plain error must fail. We agree with the state.

In making his argument, the defendant focuses on just one clause in the instruction on intent, namely, "it will be part of your duty to draw all reasonable and logical inferences," and contends that the instruction "tilt[ed] the board in favor of conviction . . . ." Such a reading of the intent instruction, however, artificially isolates the challenged language. See, e.g., *State* v. *Brown*, 259 Conn. 799, 807, 792 A.2d 86 (2002). Indeed, reading the instruction as a whole, we conclude that the jury could not reasonably have been misled. The trial court did not instruct the jury to draw *only* those reasonable and logical inferences supporting a finding of intent but, rather, to draw all reasonable and logical inferences to "determine *whether* the state ha[d] proven the element of intent beyond a reasonable doubt." (Emphasis added.) The instruction was neutral in this regard. Moreover, the court explained to the jurors that the inference of intent was "not a necessary one" and that they were "not required to infer intent from the defendant's conduct . . . ." Further, at the end of the intent instruction, the trial court "again remind[ed] [the jury] that the burden of

proving intent beyond a reasonable doubt [was] on the state."

The defendant's reliance on *State* v. *Pereira*, 72 Conn. App. 545, 805 A.2d 787 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003), is unpersuasive. In that case, the Appellate Court, while analyzing the defendant's claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see *State* v. *Pereira*, supra, 572; noted that the trial court's instruction to the jury that it "had a duty to draw all reasonable and logical inferences" was "technically inaccurate . . . ." (Internal quotation marks omitted.) Id., 576. The court nevertheless upheld the judgment of conviction, holding, among other things, that it was "not reasonably possible that the jury was misled" in reaching the verdict. Id. It concluded that the trial court had "emphasized [the] bedrock constitutional principle that a defendant must not be convicted absent proof beyond a reasonable doubt of each fact necessary to constitute the crime charged." Id., 577. The same is true here. The trial court instructed the jury that it had to "determine whether the state ha[d] proven the element of intent beyond a reasonable doubt" and, as discussed, ended the instruction by reminding the jury of the state's burden. For those reasons, we conclude that the trial court's intent instruction advising the jury to draw all reasonable and logical inferences was not a patent or readily discernable error, and the defendant's plain error claim therefore fails.[5]

Next, the defendant contends that it was plain error when the trial court, in its instructions on proximate cause, advised the jury that, in order to find the defendant guilty of murder, it did not necessarily have to find that the defendant intended the kind of harm that he caused. He argues that the court's instruction eliminated the requirement that the state prove that the defendant

[5] "Having determined that the defendant's claim fails under the first prong of the plain error doctrine, we need not reach the second prong, which examines whether the omission was so harmful or prejudicial that it resulted in manifest injustice." (Internal quotation marks omitted.) *State* v. *Blaine*, 334 Conn. 298, 313 n.5, 221 A.3d 798 (2019).

had intended to cause the death of the victim, which is an element of murder under § 53a-54a (a). Relying on this court's decision in *State* v. *Boles*, 223 Conn. 535, 613 A.2d 770 (1992), the state argues in response that, like in *Boles*, "it would strain reason to believe that the jury could have heard the challenged instruction as eliminating the element of intent." Id., 542. Although we conclude that the trial court should not have given the instruction on proximate cause under the facts of this case, we agree with the state that it is not reasonably possible that the instruction misled the jury.

We acknowledge that, because the defendant was charged with a specific intent crime, the trial court's instruction on proximate cause was improper. However, as with his first argument concerning the trial court's instructions, the defendant asks this court to isolate specific language. Considering the instruction in its entirety, we conclude that the trial court left no confusion that the state must prove each element—including the defendant's specific intent—beyond a reasonable doubt. As we previously discussed, while instructing on intent, the trial court advised the jury several times that the burden of proving intent beyond a reasonable doubt was on the state. Moreover, in its instruction on the elements of murder, the court informed the jury that "the state must prove beyond a reasonable doubt that the defendant had the specific intent to cause the death of [the victim]" and that "the defendant, in causing the death of [the victim], did so with the specific intent to cause his death; in other words, that the defendant's conscious objective was to cause the death of [the victim]." Then, after the improper instruction on proximate cause, the court summarized its instructions as follows: "[F]or you to find the defendant guilty of murder, the state must prove beyond a reasonable doubt the following elements: one, that the defendant had the specific intent to cause the death of [the victim]; and, two, acting with that intent, he caused the death of [the victim] by the discharge of a firearm." Given these instructions, we conclude that the trial court's instruction on proximate cause, although

improper, could not reasonably have misled the jury and, therefore, did not constitute plain error.

Lastly, the defendant contends that the trial court's failure to instruct the jury as to general intent deprived him of his right to due process. Specifically, he asserts that, because defense counsel argued to the jury that the defendant's conduct was reckless rather than intentional, the trial court was required to instruct the jury on general intent. The state disagrees, arguing, among other things, that the defendant's intent to fire the gun was not disputed at trial, making a general intent instruction unnecessary. We agree with the state.

"[A] jury instruction on general intent is required only when that element has been disputed at trial and there is evidence . . . that suggests that the defendant's conduct was involuntary . . . ." (Internal quotation marks omitted.) *State* v. *Anthony V.*, supra, 354 Conn. 263. Otherwise, "a defendant's intent to perform the physical acts that constitute the crime . . . in the manner proved by the evidence [is] implicitly a part of the state's burden of proof and, in that sense, an element of the crime . . . ." (Internal quotation marks omitted.) Id.

At trial, the defendant did not dispute—nor does he dispute now—that his actions were volitional. Indeed, he did not present any evidence to suggest that he accidentally or mistakenly fired the gun. Instead, the defendant argued that his actions were reckless and, in his brief to this court, attempts to equate reckless actions with involuntary actions, such as accidents or mistakes. However, in *Anthony V.*, this court concluded that a trial court's failure to include a stand-alone general intent instruction was not plain error when the principle of general intent had been subsumed in the recklessness element of a manslaughter instruction. See id., 257. The same occurred here. The trial court gave instructions on two general intent crimes, namely, reckless indifference manslaughter in the first degree with a firearm and reckless manslaughter in the second degree with a firearm. Although the jury charges for those crimes contained

no express reference to general intent, the trial court instructed the jury on recklessness. Specifically, the court instructed that "[a] person acts recklessly with respect to a result or to a circumstance . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such a result will occur or that such a circumstance exists. The risk must be of such a nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. Recklessness, then, means being aware of a substantial and unjustifiable risk and consciously disregarding that risk. It is more than failing to perceive such a risk." As in *Anthony V.*, the terms of the recklessness instruction "incorporated the concept of general intent to engage in volitional conduct." *State* v. *Anthony V.*, supra, 354 Conn. 263. Accordingly, the trial court's failure to provide a stand-alone instruction on general intent could not reasonably have misled the jury and did not amount to a patent or discernable error. The defendant's plain error claim, therefore, fails.

The judgment is affirmed.

In this opinion the other justices concurred.